(20 Misc. Rep. 262.)

### CITY OF JOHNSTOWN v. RODGERS et al.

(Supreme Court, Special Term, Fulton County. May, 1897.)

1. PLEADING—MATTERS ADMITTED BY DEMURRER—CONCLUSIONS.

In an action by a city against its chamberlain for taxes received by him, defendant answered that plaintiff was bound by law to provide for the custody of moneys received by defendant; that pursuant to that obligation it furnished him with a safe, and required him to keep the money therein, representing that the safe was a secure place for that purpose; that defendant, relying on such representations, put the money into the safe; and that it was stolen therefrom without his fault. *Held*, that such allegations as to the custody of the money were mere conclusions of the pleader, and therefore were not admitted by a demurrer to the answer.

2. OFFICERS—LIABILITY FOR PUBLIC MONEYS.

An officer who has charge of public money is an insurer thereof, and is liable for its loss, though it was stolen without his fault.

Action by the city of Johnstown against Andrew J. Rodgers, impleaded with others. Plaintiff demurs to the second defense pleaded in the answer on the ground that it is insufficient in law on the face thereof. Sustained.

Andrew J. Nellis, for plaintiff.

Frank L. Anderson, for defendant.

McLAUGHLIN, J. The plaintiff predicates its right to maintain this action upon an alleged failure on the part of the defendant to account for or pay over the sum of $1,666.13, school taxes, received by him while acting as chamberlain of the city. In that portion of the answer demurred to the defendant does not deny the receipt of this money, or his neglect to account for or pay over the same; but he alleges, as a complete defense to the claim made, that the plaintiff was bound by law to provide for the care, custody, and protection of the money when received by him, and that, in pursuance of that obligation, it provided him with an office and placed therein a safe, in which it required him to keep such money, and that it then undertook, represented, warranted, and agreed that the said office and safe were, and would continue to be, a sufficient and secure place to keep such money, and that he should not otherwise guard, keep, or be responsible for it, and that the defendant, relying upon such representations and warranties, and believing the same to be true, used said office and safe as directed, and that, notwithstanding due and proper care on his part, and solely by reason of the fault and neglect of the plaintiff, in that said office and safe were insufficient, and in an insecure condition, the money in question was unlawfully taken from the safe and office by some person or persons unknown to him,—in other words, that it was stolen without any fault or neglect on his part.

The plaintiff, by demurring, admits all of the facts stated which are properly pleaded, but it does not admit other facts or mere con- clusions of law; and, in order to determine what facts are properly pleaded, notice must be taken of the act incorporating the plaintiff, and the answer must be read as though such act was annexed to and formed a part of it. The only right which the city or its chamber- lain has with reference to the school taxes is that derived from the statute. No power exists independent of it. Considering the answer, therefore, in that light, it at once becomes apparent that all of the allegations as to what the city did, or what it was legally obligated to do, with reference to the money in question, can have no greater or other effect than would an allegation in the answer as to the mean- ing and contents of a paper set out therein or annexed thereto. Turn- ing, then, to the statute (chapter 568 of the Laws of 1895), we find that the common council, except as otherwise provided by law or that act, has the management and control of the finances of the city (section 60), and whenever the management and control of the finan- ces are taken from the city they are vested in the city chamberlain. The chamberlain is made the fiscal officer of the city (section 37). The only authority or power the common council has over the school taxes is, after the determination of the amount of tax levied by the board of education, to have the assessment rolls prepared, and cause the amount authorized to be rated and assessed upon the property with- in the city, and to attach to one of the assessment rolls a warrant, under the hands and seals of the mayor and a majority of the alder- men, commanding the city chamberlain to receive and collect the taxes (section 195). No person or body, under this statute, can ex- ercise any authority over the chamberlain with reference to the col- lecting and receiving of such taxes (sections 197 and 198); and the taxes, when collected and received by the chamberlain, can only be disbursed by him upon warrants of the board of education (section 199). The common council, therefore, has not; and neither has any other department of the city government, any right or power to direct the chamberlain when, where, or how he shall deposit or keep this money, or to relieve him in any way from any responsibility with reference to its care and custody. If I am correct in this conclusion, it necessarily follows that all of the allegations contained in the answer, to the effect that the plaintiff is bound by law to provide for the care, custody, and preservation of its property, and that it was lawfully empowered to, and did, provide for the defendant an office and safe, in which it required him to keep the money in question, or that it guarantied and represented to the defendant that it would be safe to thus keep this fund, and that he need not otherwise guard it, are mere conclusions of the pleader, based upon his construction of the statute, and as such are not admitted by the demurrer. No such power is conferred upon the plaintiff by the charter, and certainly none exists independent of it.

The only fact pleaded which requires consideration is that the money in question was stolen from the defendant without fault or negligence on his part. But is this a defense? I think not. Much might be said concerning the harshness of the rule which requires

a public officer to respond for and pay over money which has been stolen from him without his fault, but the question is not now an open one. The court of appeals has recently held (Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375) that public officers having the care of public moneys are, ex virtute officii, insurers of the same, and are liable for a loss thereof, although occurring without their fault or negligence. In the case just cited the court said:

"Without regard to decisions outside of our own jurisdiction, we think the weight of the argument, treating this as an original question, is in favor of the rule of strict liability, which requires a public official to assume all risk of loss, and imposes upon him the duty to account as a debtor for the funds in his custody."

Demurrer sustained, with costs.