CITY OF MOUNT VERNON, Respondent, *v.* JOHN H. BRETT et al., Defendants, and ANDREW M. KENLON et al., Appellants.

1. OFFICIAL BOND, WHEN A LIEN UPON REAL ESTATE. A distinction exists between a statutory and a common-law bond. The former conforms to the statute, the latter does not. A bond is not a lien upon real estate unless expressly so made, and where there is such a statute it must be strictly complied with, and held down to its positive, clear and unmistakable requirements.

2. CHARTER OF CITY OF MOUNT VERNON, SECTIONS 27 AND 44, RELATIVE TO BOND OF RECEIVER OF TAXES, CONSTRUED. A bond was given by the receiver of taxes of the city of Mount Vernon before entering upon his office for the faithful .performance of his duties, in the penal sum of $25,000, and approved by the common council. The charter (L. 1892, ch. 182) provides (§ 27) for a bond to be given by the receiver of such penal sum as shall be fixed by the common council, but not less than $20,000, to be approved by that body and filed with the city clerk. Section 44 provides for a bond by the same officer in the penal sum of $20,000, conditioned for the faithful discharge of his duties, to be approved and filed before he enters upon the duties of his office, and that said bond "shall be a lien upon the real estate of the said receiver and his respective sureties until canceled and discharged." The receiver defaulted. In an action brought against the receiver, his sureties, and purchasers of real estate from the sureties, seeking to charge the amount due from the receiver upon lands alienated by the sureties and asking that such lands be sold in the inverse order of alienation, *held,* that the bond did not conform to the requirements of section 44 creating a lien, and while it could be enforced against the receiver and sureties in the ordinary way it was not a lien upon the land of the obligors, or their grantees.

3. NEITHER THE PUBLIC OFFICERS LAW NOR CODE OF CIVIL PROCEDURE APPLY. Neither the Public Officers Law nor Code of Civil Procedure create or validate a statutory lien, as the bond was not given under section 44 of the charter, and neither is to be read in connection with that section for the purpose of creating such a lien.

*City of Mount Vernon* v. *Kenlon,* 115 App. Div. 882, reversed.

(Argued October 6, 1908; decided October 23, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 9, 1906, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to fix the amount due the plaintiff upon a bond given by John H. Brett, as principal, and his

sureties, five in number, to secure the faithful discharge by him of the duties of his office as receiver of taxes and assessments of the city of Mount Vernon; to establish the same as a lien upon certain real property belonging to the obligors when the bond was filed, and to foreclose the same.

Brett made default, but various defendants answered, some of them alleging that they were subsequent purchasers or incumbrancers for full value in good faith and without actual notice of certain parcels of the land in question.

John H. Brett was elected receiver of taxes and assessments of the city of Mount Vernon on the 16th of May, 1898, for the term of two years, commencing on the 15th of June in that year. He took the oath of office prescribed by law on the 24th of May, and between that date and the 15th of June, when he entered upon the duties of his office, the common council fixed the penalty of his official bond at the sum of $25,000. The bond in question, dated and acknowledged on the 15th of June, was " accepted " by the common council on the 6th of July, was filed with the city clerk on the 27th of July and approved by the common council on the 2nd of August, 1898. It was never filed in the office of the clerk of the county in which the city of Mount Vernon is situated and was neither recorded nor indexed by the city clerk and no book was kept by him for either purpose.

In May, 1900, Brett was re-elected to said office for the further term of two years, but he failed to qualify or to give any bond for that term, although he continued to act as receiver until June 15th, 1902, when his successor, who had been duly elected, qualified and assumed the duties of the office.

Between the 15th of June, 1898, and the 14th of June, 1900, Brett, as receiver, collected taxes belonging to the city to the amount of $18,765.25 and converted the same to his own use. Between the 15th of June, 1900, and the 14th of June, 1902, he collected and converted the further sum of $5,592.55 and between the 11th of April, 1899, and the 14th of June, 1900, the sum of $717.09, but whether that sum was converted before or after June 15th, 1900, does not appear.

The trial justice found that Brett and his sureties owned nineteen different parcels of land situate in the city of Mount Vernon on the day that said bond was filed; that after that date and before the notice of pendency herein was filed, all of said parcels were conveyed to certain of the defendants for full value, without actual knowledge and upon the usual searches made by attorneys, who failed to find said bond. Judgment was rendered fixing the amount due on the bond at the sum of $25,000, with interest thereon from April 9th, 1903, the date when the action was commenced, adjudging said sum a lien on each of said parcels of land and directing that as many thereof be sold, in the inverse order of alienation, as would make the amount so found due, with costs and an extra allowance.

The sureties as well as the defendants who claim to be subsequent lienors or purchasers for value and without notice appealed from said judgment to the Appellate Division, which affirmed the same, on its opinion rendered upon a demurrer to the complaint. Those defendants now come here.

*Odell D. Tompkins* for Andrew M. Kenlon et al., appellants. The burden of showing compliance with the requirements of section 44 rests upon the respondent, whether that section be recognized as a separate bond provision, or as merged with section 27. (Potter's Dwarris on Stat. 272, 273; *Matter of N. Y. & B. Bridge,* 72 N. Y. 530; *Matter of Mayor, etc.,* 72 N. Y. Supp. 380; *Harrington* v. *Trustees,* 10 Wend. 547.) Failing to comply with the essential requirements of section 44, the bond in question, even though intended to serve as a bond thereunder, would fail to constitute a lien upon real estate. (Jones on Liens, § 105; *Brooks* v. *Tayntor,* 17 Misc. Rep. 336; *Hall* v. *Commonwealth,* 71 Ky. 378; *Adams* v. *State,* 48 Ind. 212; *Clements* v. *Boissat,* 26 La. Ann. 243; *Mushlitt* v. *Silvermann,* 50 N. Y. 360; *Merritt* v. *Village of Portchester,* 71 N. Y. 309; *Stebbins* v. *Kay,* 123 N. Y. 31; *May* v. *Traphagen,* 139 N. Y. 481; *Cruger* v. *Dougherty,* 43 N. Y. 121.) Neither the

Public Officers' Law nor the Code of Civil Procedure (§ 723) can validate a defective bond so as to make it a lien upon real estate. (L. 1892, ch. 681, § 11; Code Civ. Pro. § 729.)

*Joseph S. Wood* for Amanda Bussing et al., appellants. A bond made in accordance with section 27 of the charter cannot be a lien on the real estate of the bondsmen. (L. 1892, ch. 182, § 27.) If any bond of the receiver and his sureties can become "a lien" on their real estate, said bond must be made and filed in accordance with section 44 of the charter. (L. 1892, ch. 182, §§ 27, 44.) A bond for $25,000 instead of $20,000, made thirty days after the election instead of fifteen or less, and approved and filed after June 15, 1898, instead of before, is not such a bond as is provided for in section 44, and, therefore, is not a lien on the real estate of the said bondsmen. (L. 1892, ch. 182, §§ 27, 44.) A bond made and executed in conformity with the provisions of section 27 or section 44 of the city charter may be a good and valid statutory bond; but it is only one made and executed in conformity with the provisions of section 44 which can be a lien on the real estate of a bondsman. (L. 1892, ch. 182, §§ 27, 44.)

*J. Mortimer Bell* for respondent. The lien of the bond created under section 44 of the charter by the filing in the city clerk's office of the bond, as against the real estate of the principal and sureties, has continued and still exists even as against their interests in such real estate at its filing, although such interests were thereafter transferred to other defendants by deed or mortgage, and such defendants took their respective deeds or mortgages for value and without any actual notice of the existence of the bond. (*M. L. Ins. Co.* v. *Drake*, 87 N. Y. 257; *Hartwell* v. *Riley*, 47 App. Div. 154; *Bedford* v. *Tupper*, 30 Hun, 174; *Simonson* v. *Falihee*, 25 Hun, 570; *Supervisors* v. *Otis*, 62 N. Y. 88; *Neeson* v. *Bray*, 19 N. Y. Supp. 841.) The sureties are to be regarded as though they had contracted in the bond that

it should have the effect prescribed by the city charter; that is, the bond is to be construed as though the provision of the city charter creating the lien were inserted in the bond. (*Village of Olean* v. *King*, 116 N. Y. 355; *Blauvelt* v. *Woodworth*, 31 N. Y. 287; *People* v. *Vilas*, 36 N. Y. 459; *Supervisors* v. *Clark*, 99 N. Y. 141.) Sections 27 and 44 of the Mount Vernon charter are to be regarded and construed as providing for one bond to be given by the receiver of taxes, and not for two bonds. (L. 1892, ch. 182, §§ 27, 44.)

Vann, J. The city of Mount Vernon was incorporated on the 22nd of March, 1892, by chapter 182 of the laws passed in that year. By section fifteen it is provided that every person elected or appointed to any office before entering upon the same shall take the oath of office prescribed by the Constitution, and that " every person so elected or appointed who neglects, for fifteen days after his election or appointment, to give the bond or security required by law, or by the common council under this act, or to take and file said oath of office, shall be deemed to have declined the office, and it shall be vacant."

Other sections regarded as material on this appeal are as follows: " Section 16. Every officer shall hold his term of office until his successor shall have been elected or appointed, and shall have qualified, unless his office has become vacant, as provided in this act."

" Section 27. The receiver of taxes and assessments shall hold office for two years. Before entering upon the duties of his office he shall enter into a bond to the city of Mount Vernon in such penal sum as shall be fixed by the common council, but which shall not be less than twenty thousand dollars, which bond must be approved by the common council and filed in the office of the city clerk."

" Section 44. The receiver of taxes and assessments within fifteen days after his election, shall make and execute as such a bond to the city of Mount Vernon, with sufficient sureties, who shall be freeholders within and residents of the city, in a

penal sum of twenty thousand dollars, conditioned for the faithful discharge of his duties, and that he will account for and pay over all moneys received by him as such receiver, which bond must be approved by the common council and filed with the city clerk before he enters upon the duties of his office. Such bond shall be a lien upon the real estate of the said receiver and his respective sureties, until canceled and discharged. The salary of the receiver of taxes and assessments shall be at the rate of two thousand dollars per year."

The following is a copy of the bond in question: "Know all men by these presents: That we, John H. Brett, as principal, and Andrew M. Kenlon, Patrick H. Sharkey, John J. Fay, Henry Palm and Peter Sheridan, as sureties, are held and firmly bound unto the city of Mount Vernon in the penal sum of Twenty-five thousand dollars, to be paid to the said City of Mount Vernon for which payment well and truly to be made we jointly and severally bind ourselves, our and each of our heirs, executors and administrators firmly by these presents. Sealed with our seals, and dated the 15th day of June in the year of our Lord one thousand eight hundred and ninety-eight. Whereas, the above bounden John H. Brett, has lately been elected to the office of Receiver of Taxes and Assessments of the City of Mount Vernon. Now the condition of the above obligation is such, That if the said John H. Brett as Receiver of Taxes and Assessments shall well and faithfully discharge the duties of his office and account for and pay over all moneys received by him as such receiver . then the above obligation to be void, else to remain in full force and virtue."

Such bond at the date thereof was signed, sealed and acknowledged by the obligors therein named.

It is unnecessary for us to decide whether the legislature intended that two bonds should be given, one under section twenty-seven and the other under section forty-four, or whether it meant that the common council should elect under which section the bond should be drawn, for the bond in question, as we think, was given under the earlier section only.

When read in connection with the Public Officers Law, to which we shall presently allude, it substantially conforms to section twenty-seven, but whether read with or without that act, it fails to conform to section forty-four. It was given before the receiver entered upon the duties of his office in the penal sum of $25,000 which had been duly fixed by the common council. It was approved by that body forty-eight days after the receiver entered upon his duties and filed with the city clerk forty-two days after that date. Section forty-four requires that the bond shall be given within fifteen days after the election of the receiver, in the penal sum of $20,000, and approved by the common council and filed with the city clerk before the receiver enters upon the duties of his office. " Such bond," as that section further provides, " shall be a lien upon the real estate of the said receiver and his respective sureties until canceled and discharged." The bond in question was not given by the receiver within fifteen days after his election, but it was given before he entered upon the duties of his office. It was not given in the penal sum of $20,000, which is unalterably fixed by the legislature in section forty-four, but was given for the sum of $25,000, the amount fixed by the common council, pursuant to the authority of section twenty-seven, which does not name the penalty but authorizes the common council to determine it, subject to the limitation that it cannot be for a sum less than $20,000. It is further to be observed that section twenty-seven provides for a bond which must be filed in the office of the city clerk without specifying the time, while section forty-four requires a bond that must be filed before the receiver enters upon the performance of his duties. Section twenty-seven contains no provision that the bond shall be a lien upon the lands of the bondsmen, while section forty-four makes the bond a lien upon the the real estate of both principal and sureties until it is canceled and discharged, although there is no provision that the lien shall be specified in the bond itself.

To summarize the chief differences, the bond was given for $25,000 as authorized by section twenty-seven, and not for

$20,000 as required by section forty-four. It was executed on the 15th of June, the day when the receiver assumed duty, as provided by section twenty-seven, but not within fifteen days after his election, as provided by section forty-four. It was approved and filed within the period permitted by section twenty seven, but not before the officer entered upon the duties of his office as prescribed by section forty-four. These provisions of the two sections are equally specific, so that the rule that the particular controls the general does not apply. When the legislature commanded through section forty-four that a bond should be given in the penal sum of $20,000, no more and no less, and conferred no power upon the common council to increase or diminish the amount, the express command was not met by giving a bond for $25,000. Section twenty-seven is the only section in the charter that authorizes the common council to fix the penalty of the bond. The common council duly fixed it at the sum of $25,000 and the bond was so written. As it conforms to section twenty-seven, but does not conform to section forty-four, why should it be held that it was given under the latter and not under the former ? The city could have no lien without conforming to the section which provides for a lien. If it desired a lien, it should have insisted upon a bond for $20,000, the only amount which, as the legislature provided, could become a lien. As it exacted a bond with a larger penalty, the sureties are bound only by the language of the bond, and the language of the section which provides for a larger penalty, supplemented by the language of the Public Officers Law. The bondsmen did not subject their property to a lien by signing a bond which did not provide for a lien and which was given under a section of the charter that does not create a lien.

All the sureties concede that they are liable on the bond, some because they regard it as a valid common-law bond and others because they think it is valid as a statutory bond given pursuant to section twenty-seven. While they admit their liability, they deny that the bond imposed any lien on their

lands because it not only fails to conform to section forty-four, which alone provides for a lien, but actually violates it.

The bond is not a lien unless some statute expressly makes it one, for there is no covenant to that effect. No writing obligatory whereby the obligor simply promises to pay a sum of money to another, is a lien on the property of the promisor in the absence of a statute or covenant expressly making it a lien, and where there is such a statute it must be strictly complied with in order to create the lien. An important case decided by the Kentucky Court of Appeals is directly analogous in principle. A statute of that state made the official bond of a sheriff a lien upon his real estate. He was required to give the bond at the January or February term of the County Court in each year, but in 1860 the sheriff of Wayne county did not give any bond until the month of June. It was held to be good as a common-law bond, but not as a statutory bond, and, hence, that it created no lien. The learned court said: " These liabilities are all created upon the part of the sheriff and his sureties by reason of the execution of his official bond as required by the statute. * * * The liens attempted to be asserted in this case by the Commonwealth must have originated from the execution of the bond by the sheriff as required by law. This bond must have been executed either in the month of January or February, and having been executed at a later date, viz., in June, 1860, it was no statutory bond, and its execution created no lien on Bates' property. It is true that Bates by the execution of the bond in June is estopped to say he was not sheriff, but this liability and estoppel did not originate by reason of his compliance with the statute or the execution of any statutory obligation, but on account of his own undertaking in the execution of a bond enabling him to collect the revenue that must be regarded as creating a common-law liability only. If Bates after his election as sheriff had acted as such, and proceeded to collect the revenues without the execution of any bond whatever in a suit against him by the Commonwealth for the moneys collected he would have been estopped to deny that

he was sheriff, and still his acting in this official capacity would not give to the Commonwealth a lien upon his estate for the reason that it cannot exist without a compliance with the statutory enactment creating it." (*Hall* v. *Commonwealth*, 71 Ky. [8 W. P. D. Bush] 378.)

While in the case before us the date when the bond was given, approved and filed may not be of controlling importance owing to the Public Officers Law, still the amount for which the bond was given shows that it was not a statutory obligation under the section giving a lien upon real estate. A statutory bond is not enough to support the judgment before us, unless it is such a statutory bond as becomes a lien by force of that part of the statute under which it was given. Section forty-four directs that "such bond," that is, a bond conforming to that section, shall be a lien upon the real estate of the receiver and his sureties. No lien is given by any other section, or by any other language. A searcher of titles, if he found the bond in question, could not identify it as given under that section.

The city tried to meet this situation by calling to its aid certain provisions of the Public Officers Law (L. 1892, ch. 681; L. 1894, ch. 403). Section eleven of that act provides that "every official undertaking, when required by or in pursuance of law to be hereafter executed or filed by any officer, shall be to the effect that he will faithfully discharge the duties of his office and promptly account for and pay over all moneys or property received by him as such officer, in accordance with law, or in default thereof, that the parties executing such undertaking will pay all damages, costs and expenses resulting from such default, not exceeding a sum, if any, specified in such undertaking. * * * The sum specified in an official undertaking shall be the sum for which such undertaking shall be required by or in pursuance of law to be given. If no sum, or a different sum from that required by or in pursuance of law, be specified in the undertaking, it shall be deemed to be an undertaking for the amount so required. If no sum be required by or in pursuance of law

to be so specified, and a sum be specified in the undertaking, the sum so specified shall not limit the liability of the sureties therein.    *    *    *    The failure to execute an official undertaking in the form or by the number of sureties required by or in pursuance of law, or of a surety thereto to make an affidavit required by or in pursuance of law, or in the form so required, or the omission from such an undertaking of the approval required by or in pursuance of law, shall not affect the liability of the sureties therein."

The sum specified in the bond under consideration is the sum required by law. It is not a bond in which "no sum" is specified, or "a different sum from that required by or in pursuance of law," for the sum of $25,000 is specified, and that sum, as fixed by the common council, is the sum "required by or in pursuance of law." There was neither omission nor variance, for section twenty-seven expressly authorizes the common council to fix the penalty, provided it is not less than $20,000, and that body accordingly fixed it at $25,000, the amount for which the bond was given. The remainder of the section, as quoted, relates simply to the personal liability of the sureties, notwithstanding certain defects, and the sureties before us admit their liability. The section contains no provision relating to liens or remedies. It simply makes valid certain defective bonds, so far as the personal liability of the sureties is concerned, but stops there and does not provide that such a bond shall be a lien on the real estate of the bondsmen, notwithstanding any such defect. It makes the sureties liable on the bond, but it does not make the bond a lien upon their property. The city gets no support for its alleged lien from this section, and none from sections twelve and fifteen of the same act, which are also relied upon by its counsel. Section twelve makes the sureties personally liable for the acts and defaults of their principal done or suffered before the bond was given, even if it was given at a date later than the law requires, provided it was given during his official term. Section fifteen validates the acts of a *de facto* officer, who, although duly chosen, enters upon the performance of the duties

of the office without taking the oath or filing the undertaking required by law. It says nothing about the liability of sureties, and neither gives a remedy nor validates a lien. The Public Officers Law simply makes a bond that is defective in form or date, or method of execution, valid as the personal obligation of the sureties, but it goes no farther. It does not make an invalid bond a lien on real estate even after it is validated, and the rule of strict construction does not permit the courts to extend the statute by implication beyond the letter of its command. A statute that makes an official bond a lien upon the real estate of the obligors, although neither filed nor recorded in the county clerk's office, where the evidence of liens on lands is kept, should be construed *strictissimi juris* and held down to its positive, clear and unmistakable requirements. No attempt can be made to wrest the bond from the section under which it was given, and turn it into a bond called for by a section under which it was not given, without violating the rights of the sureties. This reasoning applies with equal force to section 729 of the Code of Civil Procedure, which goes no farther than the Public Officers Law. Neither statute creates or validates a statutory lien, and, in this case, neither is to be read in connection with section forty-four of the charter, because the bond in suit does not purport to have been given under that section.

The learned justices below assumed, without so deciding, that the penalty of the bond could be lawfully fixed only at the sum of $20,000, although they sanctioned its enforcement as a bond for $25,000. They were of the opinion that the liability of the sureties is measured, "not by the language of the obligation assumed by them, but by the requirements of the statutes under which the obligation may be required and in conformity with which it purports to have been given." (*City of Mount Vernon* v. *Kenlon,* 97 App. Div. 191, 197.)

This position ignores the distinction between a common-law bond and a statutory bond, for the latter is one that conforms to a statute, while the former does not, although it was so intended. Doubtless the section of the statute under which

the bond was given is by operation of law read into the bond, but the vital question at once arises, under which section was the bond given? The learned Appellate Division made no attempt to answer this question.

When each of two sections of equal force in the same statute provides for a bond, and the provisions are at variance, the language of the bond must determine under which section it was given. When the language shows that the bond could have been given under one section, which affords no lien, and that it could not have been given under another section, which provides for a lien, " the requirements " of the former measure the obligation of the sureties, not those of the latter. While section twenty-seven of the charter does not specify the condition to be writen in the bond, that defect is supplied by section eleven of the Public Officers Law, so that no reference to section forty-four of the charter need be made for any purpose. Said section twenty-seven when read with said section eleven is complete and the bond in question given in conformity is a complete statutory obligation that bounds the rights and obligations of the parties thereto. The right of the city is to enforce it as a bond for $25,000 in. the ordinary way and the obligation of the sureties is to pay that amount, but the city has no right to a lien and the lands of the obligors and their grantees are not incumbered by the bond.

This conclusion makes it unnecessary to consider the other questions so ably discussed by counsel.

The judgments below should be reversed and a new trial granted, with costs to abide the event. ·

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, WERNER and CHASE, JJ., concur; WILLARD BARTLETT, J., not sitting.

Judgments reversed, etc.