### TRUSTEES OF VILLAGE OF BATH v. McBRIDE et al. (two cases).

(Supreme Court, Trial Term, Steuben County. July, 1913.)

1. MUNICIPAL CORPORATIONS (§ 172*)—VILLAGE TREASURER—LIABILITY FOR FUNDS.

The former treasurer of a village and his successor were both employés of a bank in which the former treasurer deposited the village funds. After the election of the successor, the former treasurer directed that the funds should be transferred to his successor, and they were thereafter carried on the books of the bank in the name of the successor, although no check for the amount was given by the former treasurer.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The successor knew that the village funds had been so transferred on the books, acquiesced in such transfer, assumed possession and control of the funds, and paid village orders drawn on him from such funds, treating them as checks. *Held*, that the successor waived any formal check or transfer and accepted custody of the deposit, and therefore was liable to the village for the loss of the deposit through the failure of the bank.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 396–398; Dec. Dig. § 172.*]

2. MUNICIPAL CORPORATIONS (§ 170*)—VILLAGE TREASURER—LIABILITY FOR FUNDS.

Assuming that Village Law (Consol. Laws 1909, c. 64) § 81, requiring village treasurers to deposit all moneys received by them in the bank designated by the board of trustees, applied to a village organized by a special charter, where the board of trustees of such village designated no depository, but gave the treasurer the utmost freedom to select his own banks of deposit, the treasurer was liable to a village for funds lost through the failure of the bank in which he deposited them.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 380–395; Dec. Dig. § 170.*]

3. MUNICIPAL CORPORATIONS (§ 170*)—VILLAGE TREASURER—LIABILITY FOR FUNDS.

The acceptance by the board of trustees of a village of an offer by a bank in which the village treasurer deposited the village funds to pay interest on a particular fund if left for a period of six months and the acceptance of interest on such fund did not constitute a designation of the bank as the depository of the village funds so as to relieve the treasurer of liability for their loss through the failure of such bank.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 380–395; Dec. Dig. § 170.*]

4. MUNICIPAL CORPORATIONS (§ 162*)—VILLAGE PROPERTY—PROPERTY CONSTITUTING.

Interest paid by a bank on village funds deposited therein by the village treasurer belonged to the village.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. § 162.*]

5. MUNICIPAL CORPORATIONS (§ 173*) — TREASURER — LIABILITY ON OFFICIAL BONDS.

Under Public Officers' Law (Consol. Laws 1909, c. 47) § 12, providing that, if a public officer required to give an official undertaking enters upon the discharge of any of his official duties before giving such undertaking, the sureties upon the undertaking subsequently given shall be liable for his acts and defaults done or suffered and for all moneys and property received prior to the execution of such undertaking, where a village board of trustees required the village treasurer to give a bond in the sum of $25,000, and he executed two bonds, one in the sum of $10,000 and one in the sum of $15,000, one of which was approved on the day it was executed, while the other was not approved until later, the difference in the dates of approval did not affect the liability of the sureties on the bonds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

6. MUNICIPAL CORPORATIONS (§ 173*) — TREASURER — LIABILITY ON OFFICIAL BONDS.

That one of the sureties on a village treasurer's bond was a village trustee and had the active management of the bank in which the treasurer deposited the village funds, and should have had knowledge of the financial situation of such bank, did not relieve the treasurer, the other sure-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

·ties, or the surety in question from liability for the loss of funds through the failure of such bank.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

7. MUNICIPAL CORPORATIONS (§ 173*) — TREASURER — LIABILITY ON OFFICIAL
Where a village treasurer's bond was joint and several, it was optional with the village to sue or refrain from suing such of the parties as it desired.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

8. MUNICIPAL CORPORATIONS (§ 173*) — TREASURER — LIABILITY ON OFFICIAL BONDS.
The receipt by a village after the resignation of its treasurer of a dividend on village funds deposited by the treasurer in a bank which became bankrupt was not a waiver of its rights on the village treasurer's bond, nor did it indicate a previous designation of such bank as the depository of its funds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

9. MUNICIPAL CORPORATIONS (§ 173*) — TREASURER — LIABILITY ON OFFICIAL BONDS.
The liability of a surety on a village treasurer's bond conditioned that the treasurer should faithfully execute the duties of his office and properly account for and turn over all moneys or other property of the village received by him was not lessened by representations to him prior to executing the bond by another surety that the bond in question did not cover a particular fund, but that that fund was covered by another bond, ·although the surety making such representations was a village trustee, and also part owner of the bank in which the funds were expected to be deposited.

·:.   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

10. MUNICIPAL CORPORATIONS (§ 145*) — TREASURER — LIABILITY ON OFFICIAL BONDS.
Although the statutory provisions applicable to a village treasurer's bond used the word "bond" and the word "undertaking" in the singular, where the village trustees required security in the sum of $25,000, the execution of two bonds, one for $10,000 and one for $15,000, was not unauthorized.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 319–322; Dec. Dig. § 145.*]

11. MUNICIPAL CORPORATIONS (§ 173*) — TREASURER — LIABILITY ON OFFICIAL BONDS.
Where the village treasurer's sureties assumed their obligations by separate instruments, their duties and liabilities were the same as though they had joined in a single instrument.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

12. MUNICIPAL CORPORATIONS (§ 145*) — TREASURER — LIABILITY ON OFFICIAL BONDS.
Where village trustees required the village treasurer to give security in the sum of $25,000, and he executed two bonds, one for $15,000, which was approved the same day, and one for $10,000, approved some time later, the approval of the $10,000 bond did not constitute a modification of the resolution fixing the amount of security required.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 319–322; Dec. Dig. § 145.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

13. MUNICIPAL CORPORATIONS (§ 145*) — TREASURER.— LIABILITY ON OFFICIAL BONDS.

Where a village treasurer required to give security in the sum of $25,000 gave two bonds in the sums of $10,000 and $15,000, respectively, the fact that one of the bonds did not conform to the statute and apparently was limited in its scope to a portion, instead of all of the village funds, did not affect the other bond which conformed to the statute.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 319–322; Dec. Dig. § 145.*]

14. MUNICIPAL CORPORATIONS (§ 173*) — TREASURER — LIABILITY ON OFFICIAL BONDS.

Under a village treasurer's bond conditioned for the faithful performance of the treasurer's duty, upon the treasurer's failure to pay over on demand the funds of the village which had come into his possession to the proper party, the treasurer and the sureties became liable on the bond.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. § 173.*]

15. MUNICIPAL CORPORATIONS (§ 145*) — TREASURER — LIABILITY ON OFFICIAL BONDS—INVALID STATUTORY BOND.

Where a village treasurer required to give security in the sum of $25,000 gave two bonds, one in the sum of $10,000 and one in the sum of $15,000, which did not conform to the statute, and was apparently limited in its scope to the particular fund for the purpose of building a village hall, but upon the strength of such bond the treasurer was permitted to receive and continue in control of such fund, it was enforceable as a common-law bond at least to the amount of its penalty for the failure of the treasurer to pay over such village hall fund on demand, especially in view of Public Officers' Law (Consol. Laws 1909, c. 47) § 11, providing that the failure to execute an official undertaking in the form, or by the number of sureties required by or in pursuance of law or of a surety thereto to make an affidavit required by law, shall not affect the liability of the sureties therein.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 319–322; Dec. Dig. § 145.*]

16. OFFICERS (§ 126*)—STATUTORY BONDS—LIABILITY ON OFFICIAL BONDS.

Where the form of an official bond differs from that prescribed in the statute if founded upon a good consideration, the liability of the surety is measured by the provisions of the statute rather than the language of the obligation itself.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 220–222; Dec. Dig. § 126.*]

17. MUNICIPAL CORPORATIONS (§ 145*) — TREASURER — LIABILITY ON OFFICIAL BONDS.

Under Village Law (Consol. Laws 1909, c. 64) § 58, providing that the treasurer, collector, etc., and such other officers as may be required by the board of trustees shall each execute to the village and file with the village clerk an official undertaking in such sum and with such sureties as the board of trustees shall direct and approve, and that the board of trustees may at any time require any such officer to file a new official undertaking for such sum and with such sureties as the board shall approve and Bath Village Charter (Laws 1895, c. 785) tit. 3, § 3, providing that the board of trustees shall have the management and control of the finances and property of the village, and that, notwithstanding some of their powers are therein specifically enumerated, they shall have power to make such general ordinances, by-laws, and regulations not repugnant to the Constitution or laws of the state as they shall deem expedient for the good government of the village, the board of trustees had

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

power after the approval of the village treasurer's bond to require the giving of another concurrent or additional bond.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 319–322; Dec. Dig. § 145.*]

18. MUNICIPAL CORPORATIONS (§ 145*) — TREASURER — LIABILITY ON OFFICIAL BONDS.

Under Village Law (Consol. Laws 1909, c. 64) § 58, requiring the treasurer and such other officers as may be required by the board of trustees before entering upon their duties to execute to the village and file with the clerk an official undertaking to be approved by the board of trustees, and providing that the board of trustees may at any time require any such officer to file a new official undertaking for such sum and with such sureties as the board shall approve, where, after the approval of a village treasurer's bond, a new additional bond required by the board of trustees was given, accepted, and approved by formal resolution, it was valid, even though the board's action in requiring the new bond was informal, and without any evidential record in its minute book.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 319–322; Dec. Dig. § 145.*]

Two actions by the Trustees of the Village of Bath, one against Daniel J. McBride and George W. Peck, and one against Daniel J. McBride and Orlando W. Sutton. Judgment for plaintiff in both actions.

James McCall, of Bath (Monroe Wheeler, of Bath, of counsel), for plaintiff.

H. V. Pratt, of Wayland, for defendant Peck.

J. O. Sebring, of Corning, for defendants Sutton and McBride.

SAWYER, J. By stipulation of the parties trial by jury was waived, and the above cases tried and submitted to the court together.

[1] In March, 1912, the defendant McBride was elected treasurer of the village of Bath, and thereafter took and filed his official oath together with the two undertakings which have become the subject of this litigation. His predecessor in office was one Charles L. Davison, by whom the funds of the village had been deposited in what was known as the George W. Hallock Bank, where, at the expiration of his term of office, a very considerable balance remained to his credit. At about the time of the village election of 1912, Davison, who had formerly been employed by the bank but had removed to Buffalo, called at the bank, and after some conversation with McBride in his presence instructed one of the bookkeepers that after he (McBride) was elected and had qualified to transfer the funds of the village to him, stating that, when advised of the amount of balances, he would issue checks accordingly. McBride was also employed in the bank as its teller, and so continued until it ceased to exist. After the election and qualification of McBride, the accounts, which had theretofore been carried on the books of the bank in the name of Charles L. Davison, as treasurer, were balanced, and the balances carried forward on the books in the name of Daniel J. McBride, treasurer, under which style and name they were thereafter kept. The amount of the balances was never, so far as appears, communicated to Mr. Davison, nor did he ever by checks or other instrument formally transfer same to Mr. Mc-

Bride. Mr. McBride admits that he knew and understood that the deposits of the village funds with the George W. Hallock Bank had been transferred on the bank's books from his predecessor in office to himself as treasurer; and that he acquiesced in the manner of transfer, and thereafter, as treasurer, assumed possession and control of the account, is conclusively shown by the evidence. Additional moneys of the village were received by him personally and deposited in the bank to his credit, as treasurer, and that he was careful in his business methods is evidenced by his request to the village clerk that all village deposit slips should be marked "village funds," so that the moneys should not be inadvertently placed upon the books of the bank to the credit of other institutions, or organizations, of which he was also the treasurer, and there had accounts in his name as such. Drafts made in due course of business by the village authorities upon the funds in his possession were received by him personally, paid, and credited to him in his accounts as village treasurer.

The whole difficulty, as far as he is concerned, has arisen from the fact that he was acting in the dual capacity of treasurer of the village and teller of the bank in which he kept the village moneys. That the village orders were treated as checks upon the bank and charged directly to his account, instead of being exchanged for his checks as treasurer, while not a usual business method, is a mere detail, adopted doubtless for ease and convenience, and in no manner alters or limits his liability as treasurer of the village. The transaction constituted a practical novation whereby he, as treasurer, became substituted in place of his predecessor in office as the depositor of the village funds in the Hallock bank, and a creditor of the bank therefor. Shipman v. Bank of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821.

The village of Bath is organized by a special charter known as chapter 785 of the Laws of 1895, the provisions of which, so far as they relate to the office of village treasurer, are found in section 11 of title 2, and section 6 of title 4 thereof. These provisions are supplemented by an ordinance of the village adopted under the authority of section 3, title 3, of its charter, which ordinance amplifies, to some extent, the duties of the treasurer as fixed in the charter, and provides in detail for certain matters coming under his jurisdiction in the ordinary performance of his duties.

It is insisted by defendants that under section 380 of the Village Law (Consol. Laws 1909, c. 64) certain provisions of section 81 of that act, not being inconsistent with the provisions of its special charter, are applicable to the village of Bath and the treasurer thereof; namely, that the treasurer shall deposit all moneys received by him in banks designated by the board of trustees subject to his check as treasurer, and shall not draw any moneys so deposited except as in that section specified.

[2] Whether the Village Law supplements the special charter in this particular I do not attempt to say, for the reason that there is no evidence that the George W. Hallock Bank, or any other bank, was ever designated by the board of trustees as a depository for the moneys

in the hands of its treasurer. The case is bare of any resolution to that effect, and the facts do not warrant the finding of such a designation by implication, if it should be held that such depository could be created by anything other than formal resolution. Both the defendant McBride and his predecessor in office disclaim any information concerning such a resolution, and state that they never received any instructions upon the subject from the village authorities. That the funds of the village were being kept by its various treasurers in this bank was known to the members of the village board is unquestionably true, and that no objection thereto was made seems to be conceded. I do not apprehend, however, that this is sufficient to constitute the bank an official depository. Apparently, this bank had good standing and credit in the community, and the village authorities resting for their security upon the responsibility of the treasurer and his sureties (Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, 34 L. R. A. 678, 56 Am. St. Rep. 612; City of Johnstown v. Rodgers, 20 Misc. Rep. 262, 45 N. Y. Supp. 661) saw no necessity for interference with his selection of a reputable institution as his depository.

[3] It is urged by defendants that the letter to the board of village trustees from John C. Farr, assistant cashier of the bank, under date of October 20, 1911, offering to pay 3 per cent. upon the village hall fund then deposited in the bank to the credit of the treasurer should same be left for a period of six months, or longer, such interest to begin as of the date of the original deposit, and the action of the trustees in, by resolution, accepting such offer, and later accepting an interest payment thereunder removed that fund, at least, from the control of the treasurer, and created the bank its depository therefor. The fund in question was of considerable amount, and the purpose for which it had been raised made it quite likely that its entire expenditure by the board would be deferred for some time. This offer was undoubtedly intended by the bank as an inducement for the retention of the deposit in that institution. It was the duty of the village authorities to see to it that this fund was so handled that the village should have the benefit of the normal accretion thereto, and other banking concerns would have taken it upon an interest bearing basis. This offer of the bank therefore could have been only for the object of forestalling any action by the trustees designating a depository other than that which the treasurer had himself selected, and the acceptance of the offer by the board construed in the light of all the circumstances evidences nothing except its approval of the action of the treasurer and willingness, under that condition, to leave his action undisturbed. As is well said by plaintiff: "It did not bind the treasurer to keep the funds there. It did not limit his right to transfer them to another bank."

[4] It had no effect upon the treasurer whatever, except to relieve him from the possible charge of neglect of duty in failing to obtain interest upon his village deposits, which interest, it needs no citation of law to establish, would have belonged to the village. Summing the matter up, as far as the defendant McBride is concerned, when he had qualified and the account was transferred upon the books of the

bank to his credit, he waived, as did the bank, any formal check or transfer thereof to him from his predecessor, and accepted the deposits which the accounts represented as so much cash belonging to the village for which he was the official custodian. He had the right as treasurer, had he so desired, to immediately check the moneys out of the Hallock Bank, and place them elsewhere in his discretion. He had the utmost freedom to select his bank of deposit, and by accepting this account, and thereafter leaving it undisturbed, he, for himself, chose this bank as the place for depositing his funds, as treasurer. When, therefore, the bank failed, as it afterwards did, he remained liable for the balance still standing to his credit, notwithstanding he had acted in good faith and without knowledge or intimation of its insolvency, under the rule laid down in Tillinghast v. Merrill, supra, and City of Johnstown v. Rodgers, supra.

[5] Following the election and filing of his official oath, as treasurer by the defendant McBride, and on the 19th day of March, 1912, the trustees of the village by a resolution then adopted fixed his official bonds, as such treasurer, in the sum of $25,000. In compliance with this resolution, there was thereafter prepared and executed by him two bonds, one in the sum of $10,000, and one in the sum of $15,000. Both were executed upon the 2d day of April, 1912, and that for $15,000 was upon the same day approved by the trustees, while approval of that for $10,000 was not had until the 16th day of April. Both were, however, delivered to the village clerk upon the 2d, and the difference in the dates of approval is satisfactorily explained and immaterial. Public Officers' Law (Consol. Laws 1909, c. 47) § 12.

[6] Upon each of these bonds one William N. Hallock qualified as surety. Mr. Hallock was a partner in and engaged in the active management of the George W. Hallock Bank. He had also some time prior thereto been elected, and was then serving as one of the trustees of the village of Bath. That he had, or ought to have had, knowledge of the financial situation of his bank, is evident. Neither of these facts, however, serve to relieve the principal or the other sureties from liability upon the bonds. Board of Supervisors v. Otis, 62 N. Y. 88. These instruments, having been signed by him and approved, fall within the same general principle as do those executed by attorneys in violation of the rule; that is to say, are valid obligations against both him and those with whom he is joined. Willmont v. Meserole, 48 How. Prac. 430.

[7] Coincident with the failure of his bank Mr. Hallock, however, made and filed a petition in bankruptcy, and, probably for that reason, has not been made a defendant in these actions. The bonds being joint and several, this was unnecessary, for it was optional with the plaintiff to sue or refrain from suing such of the parties thereto as it might be advised.

[8] After the failure of the bank, plaintiff caused a lawful order to be presented to the defendant McBride demanding payment to its payee of the village moneys in his possession, which payment was by him refused. Thereafter, and on June 18, 1912, the defendant McBride resigned his office as treasurer, at which time there was deposit-

ed to his credit as such in the bank a sum of money in excess of $21,-000; no one was appointed to succeed him until after the 1st of September in that year. In this interim there was declared to the creditors of the George W. Hallock Bank a 10 per cent. dividend; plaintiff after such resignation had filed with the proper authorities a claim against the bankrupt estate for the moneys so remaining on deposit to the credit of defendant McBride as its treasurer at the time of the bankruptcy, which claim was allowed, and on or about the 28th day of August, 1912, such 10 per cent. dividend thereon, amounting to $2,157.-43, was paid by the trustee in bankruptcy to the plaintiff. That these moneys so deposited, notwithstanding they were deposited by and owing to its former treasurer, belonged to the plaintiff cannot be successfully controverted, and the action of plaintiff's board of trustees in making claim therefor, there being then no treasurer of the plaintiff, in no respect alters the legal status of defendants. Supervisors v. Bank of Havana, 5 Hun, 649. It was not such an act of control as indicates the previous designation of the bank as the depository of its funds by plaintiff, nor a waiver of its rights upon the bonds. Its only effect is to lessen the amount for which defendants might otherwise ultimately be called upon to respond.

[9] The $10,000 bond, which the defendant Peck signed as surety, conforms with the requirements of the charter of the village of Bath, and after the formal recitals continues as follows:

"Whereas, Daniel J. McBride, above named, has been duly elected treasurer of the village of Bath, and by reason whereof will receive into his hands divers sums of moneys, goods, and chattels, and other things, the property of said village.

"The condition of this obligation is such, that if the above named Daniel J. McBride, his executors or administrators shall faithfully execute the duties of his said office, and properly account for and turn over all moneys, or other property of said village, received by him, then this obligation to be void, otherwise to remain in full force and virtue."

Prior to the failure of the George W. Hallock Bank, the defendant McBride had paid out upon orders issued by the plaintiff all the funds in his custody as treasurer, except those belonging to the village hall fund, so called. It is claimed by the defendant Peck that, if it shall be held that the defendant McBride is liable for the moneys standing upon the books of the bank to his credit as treasurer, nevertheless no recovery can be had against him, for the reason among others that his obligation was understood by him to be a security only for the funds of the village other than those known as the "village hall fund," and, inasmuch as all such other funds have been withdrawn from and paid over by the treasurer, his contract has been fulfilled.

Upon the trial there was received, by agreement of counsel, certain testimony to the effect that both before and when the bond was signed defendant Peck was assured by Mr. Hallock it had no relation whatever to the building fund, that that fund had been provided for by a resolution of the trustees requiring two bonds, and that this one had nothing to do with the other. This testimony was received subject to a motion to strike out, which was to be passed upon by the court upon consideration of the whole case. That this testimony is at vari-

ance with the terms of the written instrument is apparent, but it will be observed that neither the principal nor the obligee for whose benefit the bond was given took any part in, or had knowledge of this statement. The bond spoke for itself and the facts were within Mr. Peck's opportunity to ascertain. It was practically nothing more than a representation of law made by one surety to another; under such circumstances it in no wise operates to limit the force of the agreement as it was made and signed. 5 Cyc. 817. That Mr. Hallock was at the time a trustee of the village as well as part owner of the bank where the funds were expected to be deposited is conceded; but such statement made by him unofficially and for the evident purpose of obviating the necessity of paying out from his bank these deposits in cash are not binding upon plaintiff, nor do they militate against its right to enforce the solemn sealed instrument according to its terms. To hold otherwise would be simply to point out a way whereby any surety might, if he saw fit, escape from his obligation. For these reasons the evidence is permitted to stand, and plaintiff's motion to strike out is denied with the usual exception.

[10, 11] The resolution of the trustees demanded that the defendant McBride give security as treasurer in the sum of $25,000, and that this resolution was attempted to be complied with by the giving of two bonds, one for $10,000 and one for $15,000, is quite evident. Notwithstanding the charter uses the word "bond" and the Public Officers' Law the word "undertaking" in the singular, this is authorized, and where the indemnifying sureties assume their obligations by separate instruments, instead of upon the same, no difference of duty or liability exists from that incident to a joinder in a single instrument. National Surety Co. v. Di Marsico, 55 Misc. Rep. 302, 105 N. Y. Supp. 272.

[12] It is suggested by counsel that the approval of this $10,000 bond constituted, in fact, a modification of the original resolution fixing at $25,000 the amount of security to be given; but to my mind it has not this effect, and the intention of the village to demand and of the treasurer to give security to the full extent of $25,000 is apparent throughout the entire transaction.

[13] If the two bonds given by the treasurer had been similar in terms, the sureties upon each would have, unquestionably, been responsible to plaintiff to, at least, the stipulated amount of their respective obligations upon failure of their principal to pay over on demand to the proper authority the moneys in his keeping. That one of the bonds is couched in language other than that which the statute prescribes and is apparently limited in its scope to a portion instead of all the village moneys does not render the other, which is concededly according to lawful direction, utterly valueless. If one is good and the other bad, plaintiff need only suffer pro tanto. That the bond under consideration was limited in its penalty to but a portion of the full amount required would not seem to constitute a valid cause for complaint by the sureties thereto. In fact, it might with some plausibility be argued by plaintiff that, notwithstanding such limitation, the sureties thereto were holden to the full extent of the $25,000. For the village of Bath the authorized resolutions of its trustees are law, and

the Public Officers Law, which is probably applicable, provides that, "if no sum or a different sum from that required by or in pursuance of law, be specified in the undertaking, it shall be deemed to be an undertaking for the amount so required," and, "If no sum be required by or in pursuance of law to be so specified, and a sum be specified in the undertaking, the sum so specified shall not limit the liability of the sureties therein." Public Officers Law, § 11.

[14] This bond was given by the treasurer, and, among other things, recites that it stands as security for the faithful performance of his duties as such. It was the duty of the treasurer to pay over on demand to the proper party all the funds of the village which had come into his possession. This he failed to do, and thereupon the obligation ripened, and in an action for its violation the principal and the sureties thereto must meet their engagement. National Surety Co. v. Di Marsico, supra; Olean v. King, 116 N. Y. 355, 22 N. E. 559; Mayor v. Goldman, 125 N. Y. 395, 26 N. E. 456; Public Officers Law, § 12.

[15] The $15,000 bond, upon which the defendant Sutton is surety, by its conditions fails to comply in form to that prescribed for such a bond by either the village charter or by section 11 of the Public Officers Law. An extraordinary sum of money had been raised by the village for the purpose of erecting a new public building, and these moneys were held by the treasurer and deposited to the credit of a separate fund known as the "village hall fund."

This bond was apparently limited to that fund by the following language:

"Whereas, the said Daniel J. McBride, has been elected treasurer of the village of Bath, the corporation of the second part as aforesaid, and as such will receive the moneys raised for the purpose of building a village hall and said trustees have fixed the amount of said treasurer's bond for this purpose in the sum of fifteen thousand dollars.

"The condition of this obligation is such, that if said Daniel J. McBride safely keeps said village hall funds, pays them over as directed by the said party of the second part and whenever required by the party of the second part or its board of trustees renders a true and accurate account of all his transactions in regard thereto and at the expiration of his term of office, or sooner if so required pays over any balance of said moneys in his hands to his successor in office or such other person as the trustees of the village of Bath name, then this obligation to be void, otherwise to remain in full force and virtue."

If it be a valid obligation, the claim of the village, under this bond, has fully matured. All the moneys in the village treasury had been deposited by the defendant McBride in the George W. Hallock Bank, and afterwards from time to time withdrawn until at its failure there remained only moneys belonging to the village hall fund. After the happening of that event payment of such balance to plaintiff was by him refused. No question of priority of responsibility between the bondsmen upon the two bonds exists from the fact that the $10,000 bond covers all the moneys in the hands of the treasurer, while the $15,000 bond seems to cover only those belonging to the village hall funds; no moneys, other than those belonging to the village hall funds, were in his custody at the time of this demand, nor at the commencement of this action.

The resolution of the board of trustees demanding security from the treasurer to the amount of $25,000 clearly contemplated the statutory security, and when or why, or at whose suggestion, one of the bonds was, in form, made otherwise does not appear. The fact, however, remains uncontradicted that upon the strength of this bond the treasurer of the village was permitted by the trustees to receive and continue in control of the funds to which the bond related. The rule is well settled that one voluntarily assuring the good conduct of a public officer is not permitted to escape his obligation by informalities in the instrument which evidences his act, and the many adjudications of this principle have been, by the Legislature, enacted into positive statute, as follows:

"The failure to execute an official undertaking in the form, or by the number of sureties required by or in pursuance of law, or of a surety thereto to make an affidavit required by or in pursuance of law, or in the form so required, or the omission from such an undertaking of the approval required by or in pursuance of law, shall not affect the liability of the sureties therein." Public Officers Law, § 11.

[16] In cases where the form of the instrument differs from that prescribed in the statute, if founded on a good consideration, as is the bond here presented, the liability of the surety is held to be measured by the provisions of the statute, instead of the language of the obligation itself. City of Mt. Vernon v. Kenlon, 97 App. Div. 191–197, 89 N. Y Supp. 817.

I do not overlook the fact that the application of this principle to the circumstances before the court in the case last cited has been disapproved by the Court of Appeals (City of Mt. Vernon v. Brett, 193 N. Y. 276–287, 86 N. E. 6), but the general principle that the essence of the transaction controls, and the liability of a surety is fixed by the statute under which the bond is given instead of the phraseology of the instrument itself is affirmed. In that case two sections of the charter of the plaintiff city provided for the bond of the receiver of taxes. These sections differed in their requirements, and the Court of Appeals went no further than to say that in the application of the rule the Appellate Division mistook the appropriate section.

I do not, however, decide that this $15,000 bond is a statutory instrument. None of the contingencies necessary to require me to pass upon that question have arisen, and, if recovery upon the $10,000 bond is confined to its penalty, the makers thereof cannot be heard to complain because plaintiff failed to require of its treasurer in statutory form the full amount of security fixed by its resolution. The rights of the sureties upon the several bonds between themselves are not raised by these pleadings, nor now under consideration. No loss has happened to plaintiff except of moneys in its village hall fund, and aside from his failure to pay over that fund on demand the defendant McBride has faithfully executed the duties of his office as treasurer. Under these circumstances it is immaterial whether this bond can be construed as an indemnity against the loss of the other moneys of the village. The very contingency which the bond in terms engaged to protect plaintiff against has arisen, and in equity its makers cannot avoid

responsibility because it failed to guarantee all the official acts of its principal, nor because it is not broad enough in form to cover other possible losses which have not occurred.

[**17, 18**] As above pointed out, it was undoubtedly understood by all parties to be in compliance with the resolution fixing the treasurer's bond at $25,000. Were this otherwise and the approval of the $10,-000 bond a virtual amendment of that resolution reducing the requirement to that amount, it was still competent for plaintiff to exact another concurrent or additional bond to meet the exigencies of its business conditions, and such security given, accepted, and by formal resolution approved would be valid, even though the requirement was informally had and without evidential record in plaintiff's minute book. Bath Charter, tit. 3, § 3; Village Law, § 58. Whether this bond is to be considered as a compliance with the resolution spoken of or as one executed in furtherance of the general power of plaintiff to protect itself from loss seems of little moment. It was effectual for the purpose for which it was given, viz., to entitle the defendant McBride to assume the duties of the office to which he had been elected, so far, at least, as concerned the village hall funds. It was founded upon good and sufficient consideration, understandingly entered into by competent parties, without fraud or unlawful compulsion, for a purpose not legally prohibited, and has been acted upon by the plaintiff for whose benefit and protection it was given. These qualities give it legal life and make it enforceable as a common law bond, the validity of which both its principal and sureties are estopped from denying. City of Mt. Vernon v. Brett, supra; National Surety Co. v. Di Marsico, supra; Gein v. Little, 43 Misc. Rep. 421, 89 N. Y. Supp. 488. Counsel for defendant Sutton has called attention to various cases decided in other jurisdictions, which in the main accord in principle with the adjudications of our appellate tribunals. Hobbs v. United States, 17 Ct. Cl. 189, is disposed of upon the conceded fact that the depository was selected by the Secretary of the Treasury, and the nominal custodian of the moneys involved therefore relieved from responsibility for their loss without his fault. Perley v. Muskegon, 32 Mich. 132, 20 Am. Rep. 637, involves the same question and is similarly disposed of. In Wilkes-Barre v. Rockafellow, 171 Pa. 177, 33 Atl. 269, 30 L. R. A. 393, 50 Am. St. Rep. 795, the city treasurer in his private capacity had actually borrowed from the sinking fund commissioners certain moneys they were required to invest, which transaction was reported to and approved by the city council as a loan in distinguishment from the moneys held by him as a city official. Upon that showing the sureties upon his official bond were held not accountable for its safe-keeping.

Swartwout v. Mechanics' Bank, 5 Denio, 555, was based upon the attempt of a bank selected as a depository by the officer himself to withhold payment of his credit from his assignee, and apply same as an offset against a debt claimed to be owing it upon another account standing in the name of his principal. It was held that under those circumstances, as between the bank and the officer the moneys belonged to the officer, and inferentially that the rights of the principal must

be enforced against the officer and his bondsmen, which is precisely in line with the. general doctrine hereinbefore referred to and followed.

Findings may be prepared and submitted for signature in accordance with the foregoing, proper provision to be made therein for the application of the amount collected by plaintiff from the receiver in bankruptcy.

Judgment for plaintiff in both actions, with costs.