United States Fidelity, etc., Co. *v.* Poetker—180 Ind. 255.

of the act, which are not involved with §§5 and 7, and are entirely independent, and if the latter are invalid,

12. as to which we express no opinion, the valid and the invalid sections are independent and readily separable, and appellant cannot complain of an act which if invalid is not in question and does not affect it. *Hammer v. State* (1909), 173 Ind. 199, 204, 89 N. E. 850, 24 L. R. A. (N. S.) 795, 140 Am. St. 248, 21 Ann. Cas. 1034.

The judgment is affirmed.

NOTE.—Reported in 102 N. E. 25. See, also, under (1) 7 Cyc. 420, 422; (2) 7 Cyc. 422; 33 Cyc. 648; (3, 7) 8 Cyc. 864; (4, 8) 8 Cyc. 801; (5) 8 Cyc. 862; (6) 36 Cyc. 971; (9) 36 Cyc. 971, 974; (10) 8 Cyc. 801; 36 Cyc. 974; (11) 36 Cyc. 976; (12) 36 Cyc. 984. As to protection of corporations from special and hostile legislation, see 62 Am. St. 165. As to equal protection of laws, see 25 Am. St. 873. For a discussion of the state regulation of railroads as an interference with interstate commerce, see 7 Ann. Cas. 5; 13 Ann. Cas. 147. On the question of the right of a state to require railroad company to equip its road, see 13 L. R. A. (N. S.) 320.

---

## THE UNITED STATES FIDELITY AND GUARANTY COMPANY ET AL. *v.* POETKER, RECEIVER.

[No. 21,527. Filed June 24, 1913. Rehearing denied October 15, 1913.]

1. BANKS AND BANKING.—*State Regulation.*—The *quasi*-public nature of the banking business, and the intimate relation which it bears to the fiscal affairs of the people and the revenues of the State, clearly bring it within the domain of the internal police power, and make it a proper subject for legislative control. p. 260.

2. BANKS AND BANKING.—*State Regulation.—Bonds of Officers.—Statutes.*—Section 3331 Burns 1908, §2686 R. S. 1881, providing for the selection of a president and cashier by the directors of a bank organized under the laws of the State, and for the execution of bonds by such officers, while leaving the amounts of such bonds to the discretion of the directors, is mandatory upon them to exact such bond from each of the officers named, and clearly provides that the condition shall be that the officer will honestly

256 SUPREME COURT OF INDIANA,

United States Fidelity, etc., Co. *v.* Poetker—180 Ind. 255.

and faithfully discharge his duties as such officer during his continuance in office. p. 261.

3. BANKS AND BANKING.—*Bonds of Officers.—Sufficiency.—Statutes.*—The bond of a cashier or president of a bank organized under the laws of the State, which is so conditioned as to limit the obligation to less than that required by the statute (§3331 Burns 1908, §2686 R. S. 1881), is insufficient. p. 261.

4. PRINCIPAL AND SURETY.—*Bonds of Bank Officers.—Execution by Surety Companies.*—Pursuant to the provisions of §5728 Burns 1908, Acts 1897 p. 192, §1, a duly qualified surety company is authorized to execute bonds for cashiers and presidents of banks in compliance with §3331 Burns 1908, §2686 R. S. 1881, requiring the directors of banks to exact bonds from such officers, but it has no authority to execute such bonds with conditions limiting its liability to less than the obligation stated in the statute. p. 262.

5. PRINCIPAL AND SURETY.—*Contract of Surety,—Liability.*—A surety company, in dealing with a private citizen, in the absence of statutory restrictions, may make such a contract of suretyship as it chooses and will be bound only according to its terms to one who in good faith accepts the same. p. 263.

6. PRINCIPAL AND SURETY.—*Bonds by Surety Companies.—Construction.*—The rule of *strictissimi juris*, applicable in construing the contract of an individual who signs as a surety for accommodation and not for compensation, does not apply to the construction of the contract of a surety company which becomes surety for profit, but in such case .the contract is to be construed most strongly against the surety and in favor of the indemnity which the obligee had reasonable ground to expect. p. 263.

7. BONDS.—*Statutory Bonds.—Construction.*—When a bond is executed in obedience to the command of a statute, a construction will be given it which binds the obligors to the performance of the conditions which the statute declares it shall contain, even though the bond does not specifically so provide, and that such rule of construction is in accord with the settled policy of the State, clearly appears from statutory provisions relating to bonds. p. 264.

8. OFFICERS.—*Statutory Provisions.—"Official Bonds".—Bonds of Bank Officers.—Liability.*—Under the rule that bonds taken pursuant to a requirement of a public statute are official bonds within the meaning of §1278 Burns 1908, §1221 R. S. 1881, providing that no official bond entered into by any public officer shall be void for want of form or substance or recital or condition, and that recovery may be had on any such bond to the same extent as if it were perfect in all respects, the bond re-

quired of the cashier or president of a bank under §3331 Burns 1908, §2686 R. S. 1881, is an official bond and liability thereon is to be measured by the breach of the condition stated in the statute requiring the same. pp. 264, 266.

9. PRINCIPAL AND SURETY.—*Liability of Surety.—Provisions of Statutes as Parts of Bonds.*—The provisions of the statute requiring a bond enter into and become a part of the bond, whether written therein or not, and constitute the contract upon which both the rights and the liabilities of the surety are to be determined. pp. 265, 266.

10. PRINCIPAL AND SURETY.—*Action on Bonds.—Complaint.—Allegation of Defects.*—Where a bond sued on shows upon its face the defect or failure to meet the statutory requirements, the complaint need not further suggest it. p. 266.

11. JUDGMENT.—*Judgment by Default.—Power to Grant Relief.—Discretion of Court.—Appeal.*—Not only does a court have discretionary power under §405 Burns 1908, §396 R. S. 1881, in the matter of relieving a party from a judgment taken against him by default, but, independent of statute, such authority is inherent in all courts of record exercising a general jurisdiction, and the action of a court in granting such relief will be reviewed on appeal only when there has been an abuse of such discretion. p. 268.

12. APPEAL.—*Review.—Misconduct of Counsel.*—A cause will not be reversed for misconduct of counsel in making improper statements in the opening statement to the jury, where it appears that the court sustained appellant's objection thereto and instructed the jury to give such statements no consideration. p. 269.

13. TRIAL.—*Opening Statement to Jury.—Discretion of Court.*—The character as well as the extent of the statement of a case to the jury is left much to the discretion of the trial court. p. 269.

14. APPEAL.—*Review.—Improper Argument.*—In an action on the bond of a bank cashier required by §3331 Burns 1908, §2686 R. S. 1881, in view of the fact that the liability is measured by the statute and not by restrictive conditions contained in the bond, the act of counsel for plaintiff in argument discussing the difference between the terms and conditions of the bond as given and as the statute required it to be was not improper. p. 269.

From Pike Circuit Court; *J. H. Miller*, Special Judge.

Action by Fred H. Poetker, receiver of the Peoples State Bank of Huntingburg, Indiana, against The United States Fidelity and Guaranty Company of Baltimore, Maryland,

and another.   From a judgment for plaintiff, the defendants appeal.   *Affirmed.*

*Charles Martindale*, for appellants.

*Leo H. Fisher, Robert W. Armstrong, E. A. Ely, Roby & Watson* and *Salsbury & Esarey*, for appellee.

Cox, J.—Appellee as receiver of the Peoples State Bank of Huntingburg, Indiana, sued Charles Behrens, as principal, and the United States Fidelity and Guaranty Company of Baltimore, Maryland, as surety, to recover for a breach of the official bond of Behrens as cashier of the bank.   A trial by jury resulted in a verdict against both defendants for the full penalty of the bond together with interest for delay in payment after demand, amounting in all to $28,500. From a judgment on this verdict the surety company appeals and presents numerous specifications of alleged errors in support of its claim that the judgment as to it is erroneous.

The Peoples State Bank was a banking corporation organized under the laws of this State and appellant was a foreign surety company which qualified and had been authorized to transact business in this State.   It appears from the application for the bond that Behrens at that time was and had been cashier of the bank; that he had theretofore given a personal bond; that he had been ordered by the board of directors to procure a surety company bond; that his application was for a surety bond of $25,000 as cashier of the Peoples State Bank of Huntingburg, Indiana.   The president of the bank was required in the application to answer numerous questions which answers the application stated were to be the basis of the bond applied for and renewals thereof.   The bond was issued for a premium of $62.50 from March 1, 1902 to March 1, 1903, and provided that the representations and promises relative to the duties and accounts of the employe and other matters contained in the application and any subsequent representations or

MAY TERM, 1913.                  259

United States Fidelity, etc., Co. *v.* Poetker—180 Ind. 255.

promises of the employer, thereafter required or lodged with the company, should constitute part of the basis and consideration of the contract. It was then provided: ''That for the consideration of the premises, the company shall, during the term above mentioned or any substantial renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next, after proofs satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position, amounting to embezzlement or larceny and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance or of any renewal thereof or within six months thereafter, or within six months from the death or dismissal or retirement of said employee from the service of the employer within the period of this bond whichever of these events shall first happen; the company's total liability on account of said employee under this bond or any renewal thereof, not to exceed the sum of twenty-five thousand dollars.''

Following this, the prime condition of the bond, there follow many provisos tending to limit and guard the liability of the surety, requiring the employer to give notice to the surety, ''at the earliest practical moment'' of the ''discovery of any act capable of giving rise to a claim hereunder''; requiring the claim for loss to be in writing; providing that any wilful misstatement or suppression of fact in any claim should render the bond void from the beginning; that it should have a right to ratable contribution with cosureties; that it should have a right to rescind under certain conditions and escape liability for subsequent acts of the cashier; that no suit should be brought on the bond for any loss after twelve months from the discovery of the loss; and numerous other provisions for the purpose of qualify-

ing and avoiding liability. Following these there is a provision that none of the conditions or provisions of the bond shall be deemed waived unless such waiver is clearly expressed in writing; and a covenant on the part of the principal to save the surety harmless. The bond was signed by the principal and surety and accepted and approved in writing by the directors of the bank, and was subsequently filed in the office of the Secretary of State as required by law. Behrens continued as cashier and the bond was renewed annually for the years 1903, 1904, 1905 and 1906, and during this period of time there was lost to the bank through the unfaithfulness of Behrens in the discharge of his duties as cashier a sum far in excess of the penalty of the bond, and this resulted in its insolvency.

In the main the questions raised by appellant surety company are based upon the assumption that the bond which it executed for Behrens to secure to the bank the faithful discharge of his duties as its cashier is a common-law undertaking and that a recovery on it can be sustained only according to the numerous and intricate provisions and conditions contained in it, and the written application for it.

In behalf of appellee it is claimed that the bond must be held to be a statutory official bond legally of a character and with such conditions only as the statute provides. It must fairly follow, therefore, that if this underlying question is determined favorably to the contention of appellee most of the questions presented by appellant become immaterial and require no consideration.

1. It has been held by this court that "The *quasi*-public nature of the banking business, and the intimate relation which it bears to the fiscal affairs of the people and the revenues of the State, clearly bring it within the domain of the internal police power, and make it a proper subject for legislative control. Bankers invite general deposits primarily for their own profit, and usually obtain a measure of public patronage, and the expediency

of guarding the people against imposition, extortion and fraud, of affording efficient means of detecting irregular practices, and of learning the true financial condition of the bank, and the necessity of preserving the confidence of patrons in its solvency, and of protecting their interests in case of insolvency, justify inspection and control by the State." *State* v. *Richcreek* (1906), 167 Ind. 217, 222, 77 N. E. 1085, 1086, 5 L. R. A. (N. S.) 874, 119 Am. St. 491, 10 Ann. Cas. 899.

In the exercise of this governmental power the 2. General Assembly has enacted the following provision affecting banks organized under the laws of the State: "The directors shall elect one of their number president, and shall also elect or appoint a cashier. The president and cashier shall each take an oath or affirmation that he will faithfully and honestly discharge his duties. And the board of directors shall require of the president and cashier to execute separate bonds, with sureties, in such sums as they may deem proper, conditioned that they will honestly and faithfully discharge their several duties as such officers (which said bond shall be filed in the office of Secretary of State for the benefit of stockholders and creditors of such bank) during their continuance in office. * * *" §3331 Burns 1908, §2686 R. S. 1881, Acts 1873 p. 21, §3. It will be noted that while this statute leaves the amount of the bond to be fixed at the discretion of the board of directors it is mandatory upon them to exact a bond from each of the officers named, and by its terms states the simple condition upon which it must be given in clear and unmistakable words, namely, that the officer will honestly and faithfully discharge his duties as such officer during his continuance in office.

Such a plain and simple obligation with the broad 3. and comprehensive condition the statute requires, and one less direct and less burdensome for the surety does not satisfy it. A bond such as the one given in this

instance, which is manifestly prepared with studied care to avoid all liability on the part of the surety, except such as might grow out of a loss that might occur to the one to whom the bond was given, even after he had exercised that close and relentless vigilance which makes stealing well-nigh impossible, certainly does not fulfill the requirements of the statute.

4. A bond of the character of the first named, appellant was authorized, by the provisions of our laws relating to surety companies, to execute in compliance with §3331, *supra,* but not so one of the latter class. It is provided by §1 of the act of 1897 (Acts 1897 p. 192, §5728 Burns 1908), "That whenever any bond, undertaking, recognizance or other obligation is by any law of the state of Indiana, or the charter, ordinances, rules or regulations of any municipality, city government, common council, board of county commissioners, and savings bank, state bank or private bank, * * * required or permitted to be made, given, tendered or filed with surety or sureties * * *, such bond, undertaking, obligation, recognizance or guarantee may be executed by a company qualified to act as such surety or guarantor * * *; and such execution by such company of such bond, undertaking, obligation, recognizance, or guarantee shall be in all respects a full and complete compliance with every requirement of every law * * * that such bond, undertaking, obligation, recognizance or guarantee shall be executed by one surety, or by one or more sureties, or that such sureties shall be residents or householders, or freeholders, or either or both, or possess any other qualification."

The statute fixes upon surety companies the character of lawful sureties upon statutory bonds, but it gives them no authority to change the character or legal effect of the bonds which the statute exacts. Such a company could not enter into a recognizance bond and by adding to the ordinary condition for the appearance of the defendant the proviso

that it would not answer for the default of the principal, if the sheriff failed to keep him under constant surveillance, and thereby escape liability by showing the defendant's failure to appear was due to the sheriff's neglect. When appellant was requested to furnish a bond to the bank for its cashier it was bound to know the nature of the condition it would become liable upon if broken. It is, of

5. course, to be conceded that a surety company may, in dealing with a private citizen, with a free hand, unhampered by statutory restrictions, make such a contract of suretyship as it chooses and guard and limit its liability by as many provisions as it pleases and if the one for whose benefit it is given accepts it in good faith, the surety is bound only according to the terms of the bond. But

6. even in such a case the rule of *strictissimi juris,* which has been invoked for the benefit of private individual sureties who sign for accommodation and not for compensation, and which requires a strict construction of the contract in their favor and a resolution of all doubts in their favor, does not apply to the involved contract of a surety company which becomes surety for profit. In the latter case the rule is reversed and the contract, when there is room for construction, is to be construed most strongly against the surety and in favor of the indemnity which the obligee had reasonable ground to expect. *Bank of Tarboro* v. *Fidelity, etc., Co.* (1900), 126 N. C. 320, 83 Am. St. 682, 35 S. E. 588; *Geo. A. Hormel & Co.* v. *American Bonding Co.* (1910), 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513, and many cases cited in note; *Philadelphia* v. *Fidelity, etc., Co.* (1911), 231 Pa. St. 208, 80 Atl. 62, Ann. Cas. 1912 B 1085, note; *Brown* v. *Title Guaranty, etc., Co.* (1911), 232 Pa. St. 337, 81 Atl. 410, 38 L. R. A. (N. S.) 698; 32 Cyc. 306.

No other bond was taken in this case than the one in suit and it is not denied that it was taken by the directors and given by Behrens and appellant in compliance with the

264    SUPREME COURT OF INDIANA,

United States Fidelity, etc., Co. *v.* Poetker—180 Ind. 255.

statute, and pursuant to the statute, it was filed in the office of the Secretary of State. It has long been the rule in this State that when a bond is given in obedience to a command of the statute a construction shall be given it which binds the obligors to the performance of the conditions which the statute declares it shall contain even though the bond does not specifically so provide. The rule has been applied to personal sureties who have obligated themselves for accommodation without pecuniary reward. The reason for its application to corporations or others who engage in the business of becoming sureties or guarantors for profit and who offer themselves as common sureties or guarantors for hire, is greater.

That it is the settled policy of the State to fix the conditions of bonds required by statute and to hold sureties thereon to the performance of the conditions named, clearly appears from statutory provisions. In the statute relating to the bonds of public officers it is provided that such bonds shall be obligatory for the faithful discharge of all the duties required of the officer by law, and that no such bond shall be void because of defects in form or substance but upon the suggestion of such defects, such bond shall be obligatory as if properly executed. §§9111, 9113 Burns 1908, §§5528, 5530 R. S. 1881. As we have seen, the law prescribes the conditions which the bonds of the president and cashier of banks incorporated under the laws of the State shall contain. And such is the policy in relation to many other bonds required by law which will easily suggest themselves. See, also, §2024 Burns 1908, Acts 1905 p. 584, §153 relating to bonds in criminal actions.

Again it is provided in relation to other bonds required by law, generally in addition to the above provision relating to the official bonds of public officers: "No official bond entered into by any officer, nor any bond, recognizance, or written undertaking taken by any officer in the discharge of the duties of his office, shall be

void for want of form or substance or recital· or condition, nor the principal or surety be discharged; but the principal and surety shall be bound by such bond, recognizance, or written undertaking to the full extent contemplated by the law requiring the same, and the sureties to the amount specified in the bond or recognizance. In all actions on a defective bond, recognizance, or written undertaking, the plaintiff or relator may suggest the defect in his complaint, and recover to the same extent as if such bond, recognizance, or written undertaking were perfect in all respects." §1278 Burns 1908, §1221 R. S. 1881. It has been · frequently decided in this State that bonds taken pursuant to a requirement of a public statute· are official bonds within the meaning of this section of the statute. *Faurote* v. *State, ex rel.* (1887), 110 Ind. 463, 467, 11 N. E. 472; *Robling* v. *Board, etc.* (1895), 141 Ind. 522, 40 N. E. 1079; *State, ex rel.* v. *Rowles* (1912), 177 Ind. 682, 98 N. E. 722; *State, ex rel.* v. *Fletcher* (1891), 1 Ind. App. 581, 586, 28 N. E. 111; *Herod* v. *State, ex rel.* (1896), 15 Ind. App. 648, 43 N. E. 144, 44 N. E. 378; *Holthouse* v. *State, ex rel.* (1912), 49 Ind. App. 178, 97 N. E. 130; see, also, Murfree, Official Bonds §§36, 37.

It has also been held that the provisions of the statute requiring the bond enter into and become a part of the bond, whether written in it or not, and constitute the contract upon which both the rights and the liabilities of the surety are to be determined. See the cases just cited, and, *State, ex rel.* v. *Berg.* (1875), 50 Ind. 496; *Graham* v. *State, ex rel.* (1879), 66 Ind. 386, 389; *Opp* v. *TenEyck* (1885), 99 Ind. 345. In *State, ex rel.* v. *Fletcher, supra,* it was said, page 586: "The wording of the bond neither adds to nor takes from the recognizor any liability created by statute. Where a bond contains more or less than is required by statute, it operates and has the force and effect of the statute authorizing it. If the bond contains less than required by statute, the bondsmen will be held

to what it should have contained; and if it contains more than required by statute, the measure of liability would be to the extent defined by statute." In *Opp* v. *TenEyck*, *supra*, it was said on page 348: "The force and effect of this section is to cure defects and supply omissions in the class of bonds named, whether the defects and omissions be of form or substance, and to hold the obligors, both principals and sureties, to the full extent of the law requiring the bond."

It has been held that where the bond sued upon shows upon its face the defect or failure to meet the statutory requirements, the complaint need not further suggest it. *Cook* v. *State* (1859), 13 Ind. 154; *Boden* v. *Dill* (1877), 58 Ind. 273.

It is said in Childs, Suretyship and Guaranty §91, that the general rule is that, where a contract of suretyship is entered into pursuant to a statute, or to a by-law, the statute or by-law forms a part of the contract of the surety. If the law has made the instrument necessary, the parties are deemed to have had the law in contemplation when the contract was executed. See, also, *Adams* v. *Williams* (1910), 97 Miss. 113, 52 South. 865, 30 L. R. A. (N. S.) 855, Ann. Cas. 1912 C, 1129; *Growbarger* v. *United States Fidelity, etc., Co.* (1907), 126 Ky. 118, 102 S. W. 873, 128 Am. St. 274, 11 L. R. A. (N. S.) 758; *Ihrig* v. *Scott* (1893), 5 Wash. 584, 32 Pac. 466; *Slocomb* v. *Robert* (1840), 16 La. (O. S.) 173; *Boswell* v. *Lainhart* (1830), 2 La. (O. S.) 448; *United States Fidelity, etc., Co.* v. *McLaughlin* (1906), 76 Neb. 307, 107 N. W. 577, 109 N. W. 390; *United States Fidelity, etc., Co.* v. *Union Trust, etc., Co.* (1904), 142 Ala. 532, 38 South. 177.

In the case last cited the bond was almost identical in its terms with the one in suit. It was given pursuant to a statute as the bond of a register in chancery and he acted under it. It was said by the court: "It is, therefore, of no consequence that the condition of the

MAY TERM, 1913. 267

United States Fidelity, etc., Co. *v.* Poetker—180 Ind. 255.

bond is different from that which the statute prescribes for official bonds, nor of any consequence that the condition expressed in the bond may not have been broken by the officer. The condition, which, though not written into this paper, is as essentially a part of it for all the purposes of this action as if it and it alone were written into it, is that the officer, Wm. H. Parks, will faithfully discharge the duties of the office of register in chancery during the time he continues therein, or discharges any of the duties thereof —(Code 1896, §3070); and the obligors thereon are liable for any breach of this condition for the use and benefit of every person sustaining damages by such breach—(Code 1896, §3087). It would be immaterial whether such bond is in terms payable to the state: The law makes it so payable. It would be immaterial to the sureties' liability whether Parks executed it: The surety is liable whether he did or not. And it is immaterial that the instrument though signed by Parks, yet on its face imports no obligation on his part to the state: The law imports that obligation into the bond. On the other hand, no account is to be taken of and no operation is to be given to the several stipulations and conditions set down in this paper which tend to limit the liability which an official bond imports or to clog or impeach the remedy for the enforcement of such liability. The right of recovery is the same in the abstract and as to amount as if the bond had expressed the statutory conditions and those only; and action upon it is maintainable under the same conditions. It is altogether inapt and inaccurate to say that the city court in its ruling on the demurrer in line with the foregoing views, made a bond for the parties or even that the law has made a bond which the parties have not made. The law, known of all men (and even of all corporations), said to these parties, if you put forward a paper writing as and for the official bond of this officer and the officer acts under it, that paper writing imports and involves certain liability upon you in certain con-

tingencies. The parties make and exploit this writing for this purpose knowing the legal consequences of their action, and they thereby take those consequences upon themselves. The law, as it was competent for the law to do, merely gave a certain character and attached certain liabilities to certain acts. The defendant performed those acts, and it is not only no legal wrong, but not even a legal hardship for the law through its ministers to enforce such liability.'' It fairly follows from what has been said that the bond in suit must be held to be an official bond within the meaning of §1278, *supra,* and that appellant's liability on it must be measured by the breach, which is plainly shown, of the simple condition that Behrens would honestly and faithfully discharge his duty as cashier of the bank during his continuance in office.

In addition to the many questions not necessary to decide by reason of the conclusion just stated, it is contended that the court below erred in setting aside a default of appellee and dismissal of his action, and reinstating it upon the application of appellee. The cause was set for trial on December 9, 1907. Appellee's counsel resided thirty miles from Petersburg, the county seat, and failed to reach there until 2:15 o'clock p. m. of that day. Prior to their arrival the cause was, about 11:00 o'clock a. m., dismissed on motion of appellant. Upon the arrival of appellee's counsel they moved to set aside the default and reinstate the action which motion the court subsequently granted. Affidavits were filed by the respective parties in support of and against this motion. The statute (§405 Burns 1908, §396 R. S. 1881) expressly and properly vests in trial courts a discretion in the matter of relieving a party from a judgment taken against him by default which this court will review only when that discretion has been abused. Moreover, the discretionary authority to relieve a party in default is inherent in all courts of record exercising a general jurisdiction, independent of the statute. *Hoag* v. *Old*

*Peoples Mut. Benefit Soc.* (1891), 1 Ind. App. 28, 27 N. E. 438; *Mastin* v. *Indiana Car, etc., Co.* (1900), 25 Ind. App. 175, 57 N. E. 148; 6 Ency. Pl. and Pr. 149.

Complaint is presented of the misconduct of counsel for appellee in making improper statements in the opening statement of the plaintiff to the jury prior to the introduction of testimony. So far as these statements were improper and harmful to appellant the court sustained its objection and instructed the jury to give them no consideration. The character as well as the extent of the statement of a case to the jury is left much to the discretion of the trial court. *Aylesworth* v. *Brown* (1869), 31 Ind. 270; 2 Elliott, Gen. Prac. §559.

During the argument of the cause to the jury one of appellee's counsel discussed the difference between the terms and conditions of the bond as given and as the statute required it to be. In view of the conclusion reached as to the character of the bond we find nothing in the statements of counsel to which objections were made that would amount to improper argument.

As it appears that a just result was reached in the trial court the judgment is affirmed.

NOTE.—Reported in 102 N. E. 372. See also, under (1) 5 Cyc. 433; (2) 5 Cyc. 455; (3) 5 Cyc. 455; 5 Cyc. 747; (4) 32 Cyc. 303; (5) 32 Cyc. 303, 306; (7) 5 Cyc. 751; (8) 29 Cyc. 1452; (9) 5 Cyc. 754, 756; (11) 23 Cyc. 889, 895; (12) 38 Cyc. 1503; (13) 38 Cyc. 1475; (14) 38 Cyc. 1479. As to defects or irregularities in official bonds which do not release sureties, see 82 Am. Dec. 760; 90 Am. St. 188. As to acts for which sureties on official bonds are liable, see 91 Am. St. 497. As to State regulation of private banking, see 10 Ann. Cas. 903 Ann. Cas. 1914A 171.