## FIDELITY & DEPOSIT CO. OF MARYLAND v. DUKE, Supervisor of Banking of Washington.

(Circuit Court of Appeals, Ninth Circuit. December 3, 1923.)

### No. 4048.

**1. Principal and surety ⬦161—In action on fidelity bond, evidence held not to show loss due to cashier's dishonesty.**

In an action on a fidelity bond to reimburse a bank against loss due to a cashier's dishonesty, evidence that certain valueless notes found in the bank were executed for cashier's benefit, and are the basis of unauthorized credits to his account with the bank, *held* insufficient to support recovery on the bond, where there is no evidence as to the state of the account between the cashier and the bank.

**2. Set-off and counterclaim ⬦52(1)—Assignment and receipt of dividend from principal held not to prevent surety's right of subrogation.**

Where both bank and cashier were insolvent, and surety company had paid $46,000 on a bond to a county treasurer in respect to his deposit, in an action by liquidating agent of bank on cashier's fidelity bond, an assignment to surety company of county treasurer's claim, and receipt of a dividend from liquidating agent, *held* not to prevent a set-off on the theory of subrogation to treasurer's rights.

**3. Bonds ⬦50—Distinction between "statutory bond" and "common-law bond."**

Statutory fidelity bonds to a bank conform to the statute (Rem. Comp. Stat. Wash. § 3239), and common-law bonds do not, though so intended.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Statutory Bond; Second Series, Common-Law Bond.]

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Principal and surety ☞59—Character of bond determined by terms and circumstances of execution.**

. The character of a fidelity bond is determined by its terms and the circumstances of its execution.

**5. Principal and surety ☞39—Statutory fidelity bonds to bank subject to avoidance for bank's misrepresentation.**

Though statutory fidelity bonds to a bank, under Rem. Comp. Stat. Wash. § 3239, are public obligations to indirectly benefit depositors and other creditors of a bank, the contract is made with the bank, and if it makes false material representations or warranties which were relied on by surety company, the contract is subject to avoidance.

**6. Principal and surety ☞136—Depositors cannot maintain suit on fidelity bond to bank.**

No suit on statutory fidelity bonds to a bank can be maintained by depositors or other creditors or to their use, and any benefit they may derive must be worked out through the bank in its right and subject to its liabilities.

**7. Banks and banking ☞63½—Liquidating agent subject to all defenses available against bank.**

A state supervisor of banking, liquidating a bank, stands in the bank's shoes, and is subject to all defenses and rights available against the bank.

**8. Principal and surety ☞143—Surety stands in debtor's shoes.**

In action on cashier's fidelity bond, surety company stands in cashier's shoes, and is entitled to like rights and remedies.

**9. Set-off and counterclaim ☞44(1)—Surety may set off debts due from creditor or obligee.**

A surety may set off debts to him from the creditor or obligee.

**10. Principal and surety ☞144—Surety may set off debts due to principal from creditor or obligee.**

Where principal or creditor is insolvent, a surety may set off debts due to the principal from the creditor or obligee.

**11. Set-off and counterclaim ☞36—Surety company may set off debt under contract of suretyship in action by creditor's liquidating agent.**

In an action by a liquidating agent of an insolvent bank, a surety company, under Rem. Comp. Stat. Wash. § 266, may set off a debt upon a contract of suretyship, which surety company paid to county treasurer on bank's default, though surety company did not pay the bank's debt to the treasurer until after liquidation commenced.

**12. Banks and banking ☞63½—Allowing set-off held not to constitute preference.**

In action by supervisor of banking, liquidating an insolvent bank, allowing a surety company to set off a debt incurred under a contract of suretyship is no preference, where only the excess is justly owing.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by John P. Duke, Supervisor of Banking of the State of Washington, liquidating the Kelso State Bank, against the Fidelity & Deposit Company of Maryland. Judgment for plaintiff, and defendant brings error. Reversed.

Grinstead, Laube & Laughlin and Thomas E. Davis, all of Seattle, Wash., for plaintiff in error.

Miller, Wilkinson & Miller, of Vancouver, Wash., for defendant in error.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BOURQUIN, District Judge. In a trial to the court, judgment for $25,000 was rendered against plaintiff in error, defendant below, a surety company authorized to do business in Washington, upon its bonds in that amount to reimburse the bank, a Washington corporation, for pecuniary loss due to dishonesty of the latter's cashier.

[1] Defendant's contention that the record is without evidence of any such loss is hardly disputed by plaintiff and is vindicated by inspection. There is evidence tending to show that certain notes found in the bank are valueless, were executed for the cashier's benefit, and are the basis of unauthorized credits to his account with the bank; but there is no evidence of the state of that account, or that by reason of notes or credits the bank is out or the cashier in a dollar.

The judgment is reversed and retrial ordered. For enlightenment therein, some of the other errors assigned require brief consideration.

[2] In its answer defendant pleaded fraud, breach of warranties and conditions, and set-off arising from its payment of $46.000 as surety for the bank to a treasurer in respect to his deposits. All bonds were executed before liquidation of the bank commenced, and that to the treasurer was paid subsequent thereto, but before this action. Both bank and cashier are insolvent. The learned trial court denied set-off, for that in its view it "is based upon the assigned claim of the county treasurer"; that defendant filed a claim therefor with plaintiff liquidating the bank, which was allowed and a 20 per cent. dividend paid; that the bonds in the cashier's behalf to the bank are statutory "to secure the bank depositors generally"; that in consequence the warranties if not also the alleged fraud of the bank are immaterial; and that "in equity there would be no right to set-off the amount paid on the" bond to the treasurer "against the amount due on the" bond to the bank, "because of the prejudice it would work to those for whose protection the latter bond was in part at least required."

If there is any evidence that defendant counts upon an assignment from the treasurer, it has not been cited nor observed. On the contrary, defendant relies upon subrogation to the treasurer. In the circumstances, if ever, assignment does not defeat the right to subrogation. There is no inconsistency between them. So, too, that defendant presented its claim to the plaintiff and received a dividend has no effect on subrogation. Upon statutory notice in liquidation it was bound to present the claim, which allowed, is in effect a judgment. Of right defendant received the dividend. Later, the occasion for set-off arising by reason of this action, defendant rightfully asserted it. If therein it succeeds, it must account for dividends received upon the amount of it.

[3] In so far as the bonds to the bank are concerned, the evidence is insufficient to characterize them as statutory, however it may be on retrial. The distinction between statutory and common-law bonds cannot be ignored, and is that the first conform to the statute, and the latter do not, even though so intended. City of Mt. Vernon v. Brett, 193 N. Y. 276, 86 N. E. 10.

[4] The character of the bond is determined by its terms and the circumstances of its execution. Miles v. Baley, 170 Cal. 151, 149

Pac. 48; United, etc., Co. v. Poetker, 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B, 984. In the instant case the bonds are annual renewals of a series begun in 1911 and on representations by the bank stipulated to be warranties. In 1917 Washington enacted a statute (section 3239, Rem. Comp. Stats. 1922) providing that the board of directors of each bank "shall require its active officers  *  *  * . each to give a surety company bond, in such sum as the board shall specify and the state bank examiner shall approve, conditioned for the faithful and honest discharge of his duties and for the faithful application of all moneys." The bonds in suit are subsequent to the statute and substantially conform to the statutory condition, but in addition provide various other conditions for the protection of the defendant. There is no evidence that the board of directors required any of these bonds, that it or the examiner approved the amount, that no other bond was given, or that either party contemplated bonds by virtue of the statute.

[5] But, if they are statutory bonds, and in proper sense public obligations to indirectly benefit depositors and other creditors of the bank, the express obligee is the bank, if nominally it is trustee for the depositors and creditors (see Equitable, etc., Co. v. McMillan, 234 U. S. 457, 34 Sup. Ct. 803, 58 L. Ed. 1394), the contract is made with it. and if it made false material representations or warranties, relied upon by defendant, the contract of suretyship, like any other induced by fraud, is subject to avoidance.

[6] The statute, however, expresses nothing in respect to depositors or other creditors. In their behalf it does not expressly stipulate for a bond, as for the benefit of third parties does the statute in the case last cited. No suit upon these bonds can be maintained by depositors or other creditors or to their use, and any benefit they may derive is not that due third parties for whose benefit a contract is expressly made, but is wholly incidental and indirect, only to be worked out through the bank, in its right and subject to its liabilities in respect to execution and performance of the contracts and otherwise.

, Such benefit is like that accruing to each depositor from other deposits, and is no reason to reject the surety's set-off, even as would be none to reject a depositor's set-off. To this extent these bonds are not to be likened to a contractor's statutory bond for benefit of workmen and materialmen not parties to it, nor to the statutory bond expressly for the benefit of creditors of the bank in United, etc., Co. v. Poetker, supra. In any action by the beneficiaries in these latter or in their behalf, it may be that the surety cannot set off debts due it from the owner obligee, because they are not mutual and not in the same right.

[7-10] In the instant action the plaintiff, like a receiver, represents the bank and sues in its right. He stands in the bank's shoes, and subject to all defenses and rights against the bank. Further adverting to familiar principles, defendant, as surety, stands in the cashier's shoes, in no worse position, and entitled to like rights and remedies. Unquestionably, had the bank or supervisor sued the cashier upon this cause, he could set off any debt due him from the bank. Likewise can his surety, this defendant. The claims are mutual and in the same right. So meritorious and far-reaching are these principles to

adjust mutual accounts, that not only may a surety set off debts due him from the creditor or obligee (Curtis v. Davidson, 215 N. Y. 395, 109 N. E. 481; Clark v. Sullivan, 2 N. D. 103, 49 N. W. 416, 13 L. R. A. 233; Wilson v. Bank, 122 Ga. 495, 50 S. E. 357, 69 L. R. A. 97, 2 Ann. Cas. 597), but if principal or creditor is insolvent (and both are here), the surety may set off debts due to the principal from the creditor or obligee. See cases, 32 Cyc. 232.

[11] A bank may set off a depositor's debt to it against its deposit debt to him, and the great weight of authority is that a depositor may set off his deposit credit against his debt to an insolvent bank. Scott v. Armstrong, 146 U. S. 506, 13 Sup. Ct. 148, 36 L. Ed. 1059; Puget, etc., Bank Co. v. Wash. Pav. Co., 94 Wash. 504, 162 Pac. 872; cases in notes, 25 A. L. R. 938. Doubtless it will be conceded that set-off does not depend upon the variety of contract debt or upon the character of parties. Hence a debt upon a contract of suretyship may be set off equally with a debt by contract of deposit, and a surety corporation for hire may assert set-off equally with any other character of surety. The general statute of Washington, in its provision for set-off of cross-demands, does not except, and so includes, sureties and debts to them. Rem. Codes 1922, § 266.

[12] And in any such set-off is no preference, for only the excess is justly owing or assets to whom due, insolvent or not. Scott v. Armstrong, 146 U. S. 510, 13 Sup. Ct. 148, 36 L. Ed. 1059; St. Paul, etc., Co. v. Leck, 57 Minn. 87, 58 N. W. 826, 47 Am. St. Rep. 576. That defendant did not pay the bank's debt to the treasurer until after liquidation commenced is immaterial, for the obligation to pay preceded that time, and, payment made, subrogation relates to the time of obligation assumed. Henningsen v. U. S. Fid. Co., 143 Fed. 814, 74 C. C. A. 484.

The bank contracted to reimburse defendant for payment of the former's debt to the treasurer. Payment made, and defendant sued upon its contract to reimburse the bank for the cashier's default, in our opinion defendant is entitled to set off the former debt against the latter. Incidentally, all depositors derive a greater benefit by reason of the relations between defendant and the bank, though set-off be allowed, than they would were those relations absent. Upon retrial the evidence may be so far different that further comment now is unnecessary.

Reversed.