[No. 18538.    Department One.    June 25, 1924.]

# JOHN P. DUKE et al., Respondents, v. NATIONAL SURETY COMPANY, Appellant.[1]

OFFICERS (53)—PRINCIPAL AND SURETY (13-1)—STATUTORY BOND—CONSTRUCTION—OBLIGATIONS OUTSIDE STATUTE. Construing a statutory bond of a compensated surety most strongly against the surety, and reading into it the provisions of the statute, a bond to a bank conditioned as required by Rem. Comp. Stat., § 3239, for the "faithful and honest discharge of the employees' duties," is a statutory bond, where it covers the exact matter, though not in the exact language of the statute; and it is immaterial that it also contains other matters having no relation to the statute going beyond but not limiting the statutory requirements.

PRINCIPAL AND SURETY (13-1)—STATUTORY BOND—EXCEPTIONS—STATUTORY REQUIREMENTS. In such a case, an exception that the bond does not cover any loss which is the result of a loan made by an employee unless made with intent to defraud, was intended to mean that it covered no loss suffered by the bank unless the loss was the result of an employee's dishonesty or bad faith.

SAME (13-1)—LIABILITY OF SURETY—STATUTORY BOND—INTENT OF PARTIES—EVIDENCE—SUFFICIENCY. In such a case, a bond will be presumed to have been intended as a statutory bond, approved by the state bank examiner, on the presumption that the bank and the examiner were heedful of their duties, where it was the only bond taken by the bank to protect itself against the malfeasance of its officers, and was among its papers when various examinations were made and no objection to it was made by the state officials.

OFFICERS (53)—BONDS—NATURE OF OBLIGATION. A bond given to a bank for the faithful discharge of the duties of its employees as required by Rem. Comp. Stat., § 3239, is a statutory bond, although not given by a public officer and not taken for the benefit of the general public.

PRINCIPAL AND SURETY (17)—LIABILITY OF SURETY—LOSSES SUSTAINED. In a statutory bond given under Rem. Comp. Stat., § 3239, for the faithful and honest discharge of the duties of employees of a bank, provisions relieving the surety by failure of the bank to give notice as soon as possible or to begin action within twelve months are inapplicable.

[1]Reported in 227 Pac. 2.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered October 24, 1923, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Affirmed.

*Tucker & Hyland, C. B. White,* and *Hayden, Langhorne & Metzger,* for appellant.

*F. D. Oakley, Guy E. Kelly,* and *Thomas MacMahon,* for respondents.

MACKINTOSH, J. — The appellant, a compensated surety, on November 26, 1918, furnished a bond to the Scandinavian American Bank of Tacoma, of which the respondent is now representative as the supervisor of banking in charge of its liquidation, it having become insolvent. We will hereafter refer to the bank as though it were the actual respondent. This bond was renewed on October 26, 1919, and again on November 26, 1920, for one year. The bank became insolvent in January, 1921. Respondent has made claim against the appellant on the bond, alleging that the bank suffered losses in amounts exceeding the amount of the bond and asking recovery for the full amount of the bond. So far as material, the bond agrees to:

"Hold it (the bank) harmless from and against loss to an amount not exceeding $50,000 of money, currency, bullion, bonds, debentures, scrip, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar items hereinafter referred to as property. . . .

"(a) Through any dishonest act of the employees, wherever committed and whether committed directly or by collusion with others. . . .

"(b) Through robbery, burglary, theft, hold-up, destruction or misplacement while the property is within any of the insured's office.

"(c) Through robbery, hold-up or theft by any person whomsoever while the property is in transit within twenty miles of any of the offices. . . .

"This bond does not cover: . . .

"(d) Any loss, the result of any loan made by the insured or by any of the employees, whether authorized or unauthorized, unless such loan be made with intent on the part of such employees to defraud the insured. . . .

"(4) The insured shall give to the underwriter written notice of any loss hereunder as soon as possible after the insured shall learn of such loss, and within ninety days after learning of such loss shall file with the underwriter an itemized proof of claim, duly sworn to. . . .

"(6) No action or proceeding shall be brought under this bond in regard to any loss unless begun within twelve months after the insured shall learn of such loss, or in case such limitation be void under the law of the place governing the limitation hereof then within the shortest period of limitation permitted by such law.

"(11) This bond shall terminate as to any employe (a) as soon as the insured shall learn of any default hereunder, committed by such employe."

Section 3239, Rem. Comp. Stat. [P. C. § 282], is as follows:

"The board of directors of each bank and trust company shall require its active officers and employees and such other officers as they shall designate, each to give a surety company bond, in such sum as the board shall specify and the state bank examiner shall approve, conditioned for the faithful and honest discharge of his duties and for the faithful application of all moneys, funds and valuables which shall come into his possession or under his control."

Section 777, Rem. Comp. Stat. [P. C. § 7431], reads:

"No bond required by law, and intended as such bond, shall be void for want of form or substance, re-

cital or condition; nor shall the principal or surety on such account be discharged, but all the parties thereto shall be held and bound to the full extent contemplated by the law requiring the same, to the amount specified in the bond. In all actions on such defective bond, the plaintiff may state its legal effect in the same manner as though it were a perfect bond."

The first question for determination is whether the bond is a statutory one, as claimed by the respondent, or a common law bond, as claimed by the appellant. In the determination of this question certain general rules are to be borne in mind. One of these is that, in dealing with the bonds of a compensated surety, they are to be most strictly construed against the surety, and where the terms of such a bond are susceptible of more than one construction the court will adopt that construction most consistent with the purpose to be accomplished, which would be the construction most favorable to the beneficiary. Stearn's Suretyship (3d ed.), p. 404; *Southern Surety Co. v. Kinney*, 74 Ind. App. 205, 127 N. E. 575; *Northern Pacific R. Co. v. Fidelity & Dep. Co.*, 74 Wash. 543, 134 Pac. 498; *Costello v. Bridges*, 81 Wash. 192, 142 Pac. 687, L. R. A. 1915A 853. Another rule is that, in a statutory bond, the provisions of the statute are read into the bond, and if there are conditions contained in such a bond repugnant to the statute, such conditions are to be treated as surplusage. *Snohomish County v. Ruff*, 15 Wash. 637, 47 Pac. 35, 441; *Davis v. Virges*, 39 Wash. 256, 81 Pac. 688; *Wenatchee Orchard & Irr. Co. v. Thompson*, 60 Wash. 643, 111 Pac. 874; *Denny-Renton Clay etc. Co. v. National Surety Co.*, 93 Wash. 103, 160 Pac. 1; *Salo v. Pacific Coast Casualty Co.*, 95 Wash. 109, 163 Pac. 384, L. R. A. 1917D 613. The corollary to this rule is that, where the bond is a statutory one, the statutory conditions which are not expressed in the bond will be

inserted therein. These two rules are virtually covered by § 777, *supra*.

We come first to the determination of whether this bond can be construed as a bond given under § 3239, *supra*. That section provides that a bank shall require a surety bond conditioned for "the faithful and honest discharge of the employees' duties in the faithful application of all funds which may come into their possession." The bond here, in subdivision (a), though not in the exact language of the statute, covers the exact matter referred to in the section quoted, and were there nothing more in the bond than this there would be no hesitancy in declaring the bond to be a statutory bond. It is pointed out, however, that subdivisions (b) and (c) relate to matters not covered by the statute and constitute the bond really a contract of insurance. It is true that the matters in (b) and (c) have no relation to the statutory requirements, but it is to be noticed that they do not limit the statutory requirements but go beyond them and afford an added protection to the bank. Those authorities which strike provisions in statutory bonds limiting the statutory requirements would seem to justify the holding that where there are provisions in bonds in addition to those required by statute, and not repugnant thereto, such additional provisions are effective and that in reality the bond partakes of two characteristics—that it is not only a statutory bond but is a common law bond, in so far as it contains provisions additional to the statutory provisions. This court, in *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767, construing a question somewhat analogous, gave countenance to this view, where we said:

"The law seems to be well settled that bonds of this nature may be required by, and given to, a public corporation in excess of, or without any statutory au-

thority and the beneficiaries thereunder be none the less entitled to recover thereon.''

If the bond contained only provisions (a), (b) and (c), it clearly would be proper to interpret it as a statutory bond, in so far as provision (a) is concerned, with additional common law bond provisions (b) and (c), but attention is called to the exceptions, one of which we have set out as (d), which provides that the bond does not cover any loss which is the result of a loan made by an employee unless the loan was made with intent to defraud. Of course, if it is a statutory bond, such a provision, under the rules to which attention has been called, if in conflict with the statutory requirements, would be read out of the bond, and in any event, bearing in mind that other rule which provides that the bond shall be so construed in favor of the beneficiary, exception (d) should be held to mean that the bond does not cover any loss suffered by the bank unless such loss was the result of an employee's dishonesty or bad faith. When so read, the exception in no way conflicts with the requirement of § 3239, *supra,* and the surety company is still liable for ''the faithful and honest'' discharge of the employee's duties.

If this bond can be interpreted as a statutory bond, the question then arises whether it was so intended. As supporting the argument that it is not intended as a statutory bond the appellant claims that the bond was never ''required'' nor was it approved by the state bank examiner, as called for by statute. It must be conceded that the testimony upon these two points is meagre. However, it does disclose that this bond was the only one taken by the bank to protect itself in any manner against possible malfeasance of its employees; that the bond was found among the bank's papers

when the liquidator took charge, and there is some testimony by officers and directors that this bond was taken in conformity with the mandate of the statute. This testimony, although not direct and positive, receives the aid of the presumption that the officers of the bank were heedful of the duties imposed upon them by law. The testimony in regard to the approval of the bond by the state bank examiner consists of proof that the bond was in the papers of the bank and was there at the time that the various examinations were made of the bank by the examiner or his deputies. If the bond was examined by such officers and no objection was made thereto, we do not think the statute calls for any more formal approval; but if a more formal approval was required, the presumption again is that the state officers had done what is required to be done, and so disposes of this contention.

Appellant further argues that this is not, in any event, a statutory bond, because it was not required by statute to be given by a public officer to secure performance of his official duties, and because the bond was not given for the benefit of the general public or any part thereof. As we view it, a definition such as is contended for by the appellant of a statutory bond is too restricted and we agree with what was said by the supreme court of Indiana in *United States Fidelity & Guaranty Co. v. Poetker,* 180 Ind. 255, 102 N. E. 372, that

"It has been frequently decided in this state that bonds taken pursuant to a requirement of a public statute are official bonds within the meaning of this section of the statute."

As bearing generally upon the question here, the following cases are to be noticed:

*United States Fidelity & Guaranty Co. v. Poetker, supra,* which holds that the quasi-public nature of the

banking business makes it a proper subject of legislative control, and that a surety for profit, giving a bond to a bank to cover its employees, should have its contract construed most strictly against it, and that such a bond should have its liability measured by the statutory conditions, and that provisions therein intended to limit or avoid liability are without effect, and that provisions of the statute are read into the bond, whether written therein or not, and construing the contract upon which the rights and liabilities of a surety are to be determined, contains a convincing discussion of the subject.

The supreme court of Oklahoma, in *Western Casualty & Guaranty Ins. Co. v. Board of Com'rs of Muskogee County,* 60 Okl. 140, 159 Pac. 655, reviews many of the prior decisions of various courts and says:

"Here the statute fixes the conditions of the depository bond. Section 1540, *supra*. This law, with all its terms, no more and no less, becomes a part of the bonding contract. The Board has no authority to waive any part of the statute nor add anything to it. The bond in controversy, as executed, contains all the conditions required by the statute, with the addition of a condition requiring notice, which tends to modify the statute and to limit the liability. This additional condition, we think, may not be imposed."

The last suggestion made in the above excerpt disposes of another contention of appellant—that, under provisions (4) (6) and (11), the surety should have been relieved by failure of the bank to give notice as soon as possible after it had learned of the losses, and by failure to have begun action within twelve months after learning of such loss; and further, that the bond, in any event, was terminated because the bank should have learned of the defaults of its employee, which occurred even before the bond was renewed the first

time, in 1919. So far as this bond is a statutory bond, such provisions are inoperable; and so far as it is a common law bond, it is not necessary for us to determine their effect here. The case of *Fidelity & Deposit Co. v. Duke*, 293 Fed. 661, does not hold that a bond similar to the one given here is not a statutory bond, but sent the case back for a new trial to determine the question whether the bond had been required by the board of directors or approved, and as bearing on this question, to determine whether any other bond had been given and whether the parties contemplated that the bond was given by virtue of the statute. The case of *Smith v. Tukwila*, 118 Wash. 266, 203 Pac. 369, is only authority to the effect that where a bond is required by statute and a bond is given which, as that case says, "does not meet any of the requirements of the statute," such a bond is not a statutory bond, but that it may be construed as a common law bond, there being no provision of law by which a common law bond might not be taken. If the bond before us, like the bond in the *Smith* case, did not meet any of the statutory requirements, there could be no question, of course, that it was not a statutory bond, no matter what may have been the intent of the parties in executing it, and there being no provision in the banking law, or anywhere else in the statutes, forbidding a bank taking a common law bond, it would be construed to be a bond of that nature.

Being satisfied, therefore, that this bond is a statutory bond, the only question remaining in this case is to determine the appellant's liability thereunder.

One Larson was, during the life of this bond, vice-president and general manager, and later president of the bank, and numerous of his transactions are set up as having resulted in loss to the bank and constituting

dishonest acts. The sum total of the losses resulting from these acts exceeded by many times the appellant's liability. It only becomes necessary to determine whether there are a sufficient number of these in amount to cover that liability, and we may exclude various items about which there may be a serious question.

Taking up the items which the evidence appears clearly to establish as having resulted in a loss and having been the result of dishonest acts, we find the following:

(1) An item of $20,000, which arose in this manner: The capital stock of the bank was increased and Larson subscribed for 1,443½ shares of the increase, and for this sale to himself he paid himself a commission of $20,000 out of the bank's funds.

(2) Larson had a personal hotel bill in the sum of $1,445.09 which, under his direction, was charged to the bank as one of its expenses.

(3) Larson made a note payable to a bank in Nome, Alaska, which he deposited in his bank and credited the amount to his personal account. As a cash item the note was forwarded to the Nome bank, which did not pay it, the testimony showing that that bank had not authorized Larson to make or send the note to it.

(4) Larson had a note in the Merchants Loan & Trust Company of Chicago, interest upon which in the amount of $2,035.18 he directed the Chicago bank to charge to the account of the Scandinavian American Bank.

(5) At the time of the failure of the bank, Larson had an overdraft in the sum of $1,589.20, and while ordinarily an overdraft, though unlawful, may not necessarily have been dishonest, under all the circumstances of this bank and Larson's knowledge of them

it is plainly apparent that this overdraft comes within the category of dishonest transactions.

(6)   The account of one Lindeberg, a depositor, was charged in the sum of $31,250, which was paid by Larson to Johnson, another officer of the bank, who was desirous of disposing of his stock in the bank.   A cashier's check was drawn for this amount to pay it upon the order of Larson for the purpose of paying Johnson, and the transaction was held in the cash account for two or three days, when Larson ordered that it be charged to Lindeberg's account.   Such a transaction, of course, was illegal.   The Lindeberg indebtedness to the bank was far in excess of the amount which could be loaned to any one person under the law, and the Lindeberg indebtedness has resulted in a loss of more than the amount of this bond.   As was said in *National Surety Co. v. Williams,* 74 Fla. 446, 77 South. 212:

".  .  .  when Wilder (dishonest cashier) put his note, which was of no value, in the bank, and issued a certificate of deposit of the bank for a like amount, which he used to purchase property for himself, the transaction was in legal effect the same as if he had taken the cash out of the bank and used it in the purchase of the property.   In this situation it cannot be successfully contended that he has not misappropriated the funds of the bank from which it has suffered pecuniary loss, nor that such misappropriation was not fraudulent and dishonest."

All of these transactions were without the authority of the board of directors and without their consent or actual knowledge, although some of the transactions might have been discoverable by a thorough examination of the books of the bank, but were not discoverable by such an examination as the law holds the directors accountable to make.   The sum total of the loss as a

result of these clearly dishonest acts exceeds the amount for which the appellant is liable, and the judgment against it in the full amount of its bond is therefore affirmed.

MAIN, C. J., TOLMAN, and PARKER, JJ., concur.