**DUKE, State Supervisor of Banking, v. FIDELITY & DEPOSIT CO. OF MARYLAND.** *

(Circuit Court of Appeals, Ninth Circuit. May 11, 1925.)

No. 4367.

Principal and surety ⬤⇒39—Bonding company held not liable to bank on bond given in reliance on false representations.

Bonding company, giving bond to reimburse bank for losses through misconduct of its cashier in reliance upon representations, agreed to be warranties, that cashier had faithfully and honestly accounted for all money and property in his control since issuance of prior bond, *held* not liable on such bond, where, at time any such representations were made, cashier had, in fact, been unlawfully borrowing bank's funds on his note or obligation without approval of board of directors, which fact was evident from even a cursory examination of bank's records.

5 F.(2d)—20

*Rehearing denied June 15, 1925.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by John P. Duke, as Supervisor of Banking of the State of Washington, liquidating the Kelso State Bank, against the Fidelity & Deposit Company of Maryland. Judgment for defendant, and plaintiff brings error. Affirmed.

Miller, Wilkinson & Miller, of Vancouver, Wash., for plaintiff in error.

Grinstead, Laube & Laughlin and Thomas E. Davis, all of Seattle, Wash., for defendant in error.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. The defendant in error (a surety company) was defendant to this action, which was brought in the court below by the plaintiff in error to recover upon certain of its bonds to reimburse the insolvent Kelso State Bank of Washington for losses sustained by the rascality of its cashier. The case has been here before (293 F. 661), when the judgment which had been given by the trial court against the surety company was reversed and the case remanded for a new trial. In the course of the opinion rendered in support of that judgment, this court said, among other things:

"In so far as the bonds to the bank are concerned, the evidence is insufficient to characterize them as statutory, however it may be on retrial. The distinction between statutory and common-law bonds cannot be ignored, and is that the first conform to the statute, and the latter do not, even though so intended. City of Mt. Vernon v. Brett, 193 N. Y. 276, 86 N. E. 10.

"The character of the bond is determined by its terms and the circumstances of its execution. Miles v Baley, 170 Cal. 151, 149 P. 48; United, etc., Co. v Poetker, 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B, 984. In the instant case the bonds are annual renewals of a series begun in 1911 and on representations by the bank stipulated to be warranties. In 1917 Washington enacted a statute (section 3239, Rem. Comp. Stats. 1922) providing that the board of directors of each bank 'shall require its active officers * * * each to give a surety company bond, in such sum as the board shall specify and the state bank examiner shall approve, conditioned for the faithful and honest discharge of his duties and for the faithful application of all moneys.' The bonds in suit are subsequent

to the statute and substantially conform to the statutory condition, but in addition provide various other conditions for the protection of the defendant. There is no evidence that the board of directors required any of these bonds, that it or the examiner approved the amount, that no other bond was given, or that either party contemplated bonds by virtue of the statute.

"But, if they are statutory bonds, and in proper sense public obligations to indirectly benefit depositors, and other creditors of the bank, the express obligee is the bank, if nominally it is trustee for the depositors and creditors (see Equitable, etc., Co. v. McMillan, 234 U. S. 457, 34 S. Ct. 803, 58 L. Ed. 1394), the contract is made with it, and if it made false material representations or warranties, relied upon by defendant, the contract of suretyship, like any other induced·by fraud, is subject to avoidance."

The record shows that the Kelso Bank, having made application to the American Bonding Company (predecessor of the defendant in error) to become surety on a bond for its then cashier, one Stewart, in the amount of $25,000, the bonding company, before passing on the application, required the applicant to make answer to a series of questions pertaining to the application, which answers to be "warranties and form a part of and be conditions precedent to the issuance, continuance or any renewal of or substitution for, the bond that may be issued" in favor of the bank upon the cashier mentioned.

The answers so required were returned by the bank with the conditions stated and the desired bond issued accordingly, which was continued in force by annual renewals until May 1, 1913, at which time the present defendant in 'error, having acquired the American Bonding Company, executed a similar bond in the sum of $25,000, for a period of one year from May 1, 1913, which bond was continued in force by annual renewal certificates until May 1, 1920, when another but similar bond was issued by the defendant in error in the like sum of $25,000, effective from May 1, 1920, in which last-mentioned bond the bank agreed that it was given upon the representations and condition of the original statement furnished to the American Bonding Company, and expressly declares its execution to be in consideration of the statements made by the bank relative to its cashier Stewart, his conduct, duties, employment, and accounts, the manner of conducting the business of the employer, and other things connected with the issuance of the bond, which statements,

together with any other statements in writing thereafter made by the employer to the company relating to any such matters, should be considered a part of the contract or any continuance or continuances thereof and as warranties, and that any such statements made in writing by the president or any officer or director of the bank should be its statements within the meaning of the bond during each year thereafter, including the year 1919. The bank, in order to obtain a continuance of the last-mentioned bond, delivered a certificate to the defendant in error, certifying that its cashier, Stewart, had faithfully, honestly, and punctually accounted for all money and property in his control and custody and had always proper securities and funds on hand to balance his account and was not in default to the bank.

The bond covering the period from May 1, 1913, to May 1, 1920, provided that the defendant in error would to the extent of the penalty thereof reimburse the bank for such pecuniary loss of moneys, securities, or other personal property belonging to the bank as it should sustain by any dishonest act or acts of the cashier in the performance of any of his official duties; and would indemnify the bank against loss, not exceeding the penalty of the bond, of any money or other personal property through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful extraction of its cashier Stewart, directly or in connivance with others while in the bank's service.

It appears that the bank was closed by the banking department of the state of Washington March 17, 1921; its cashier, Stewart, then disappearing.

The present defendant in error, in answer to the complaint against it, also alleged that, prior to the closing of the bank, it as surety, together with the bank as principal, executed certain bonds to the county treasurer of the county of Cowlitz, Wash., on which it was compelled to pay subsequent to the closing of the bank $46,163.29. It was held by this court in its former decision that has been referred to that the surety company was entitled to set off the amount it was so compelled to pay to the county treasurer of Cowlitz county against any liability it might be liable for on the bond given by it.

The case shows that at all times in question it was unlawful for any officer of the bank to loan to himself any of the bank's funds upon his own note or obligation without first having obtained the approval of the board of directors of the bank; and upon the retrial of the case the court below found, on evidence which we think sustains

the findings, among other things in effect, that the requirements of the bonds that have been referred to and the bond in suit were executed in reliance upon certificates executed by the president of the bank to the surety company, reading as follows:

"This is to certify that since the issue of the above bond, Mr. F. L. Stewart has faithfully, honestly and punctually accounted to me for all money and property in his control or custody as my employee, has always had proper securities and funds on hand to balance his accounts, and is not now in default to me."

The court below further found as facts that during many years prior to March 17, 1921, and particularly during the years 1917, 1918, 1919, and 1920, the cashier, Stewart, repeatedly borrowed money from the bank on notes signed by himself, which notes were regularly entered on the note registers of the bank, and that any person making even a cursory examination of its records must have known of such loans; that the president of the bank who signed the certificates referred to knew of them, and that none of them were authorized by the board of directors of the bank; that the making of such loans under the circumstances stated was by statute of the state enacted in the year 1917 made a felony; that during the years 1917 to and including 1921 the cashier, Stewart, repeatedly and without authority overdrew his checking account in the bank, during which time scarcely a month passed that he did not have overdrafts, each and all of which were made without any authority of the board of directors, and constituted a felony under the state statute; that if the defendant surety company had known of the loans to the cashier or of his overdrafts, it would not have executed the bond in suit, nor any of the renewals of the preceding bonds.

The bond in suit, while complying with the state statute relating to such bonds, contains in addition various other conditions for the protection of the surety company, as stated by this court in its former opinion. It remains, therefore, unnecessary to characterize the bond in question, for the instrument between the bank and the surety company, as was expressly decided by this court in its former opinion, constituted a contract between the bank and the surety company, and "if it made false material representations or warranties relied upon by defendant, the contract of suretyship, like any other induced by fraud, is subject to avoidance."

That is the law of the case, and the judgment is affirmed.